# Staunton.

## THE BERTHA ZINC CO. v. MARTIN'S ADM'R.

### SEPTEMBER 19, 1895.

1. PLEADING—*Variance Between Pleading and Proof—Objection in Appellate Court.*—A variance between the pleadings and proofs should be taken advantage of in the trial court by an objection to the introduction of the evidence when offered, or by a motion to exclude after the evidence has been received, and proper bill of exception taken to adverse rulings. Section 3384 of the Code was enacted to obviate just such difficulties. The objection cannot be made for the first time in the appellate court.

2. MASTER AND SERVANT—*Safe Place to Work—Leaving Place Assigned—Contributory Negligence.*—If a servant who has been assigned a safe place to work in, voluntarily leaves it, without any reasonable and proper cause for so doing, and in consequence thereof, is injured, he has no remedy against the master. But it is not unreasonable for a servant, in cold weather, to go to a fire, where dynamite is being thawed, to warm his hands; and if he and other hands resort to the fire for that purpose with the knowledge of and without objection from the master, and injury results therefrom, this is not such contributory negligence on the part of the servant as will preclude his recovery.

3. MASTER AND SERVANT—*Servant Assumes Ordinary Risk of Employment.*—A servant entering into the employment of a master assumes such risks as are ordinarily incident to the employment from causes open and obvious to the servant, the dangerous character of which he has had opportunity to observe, and he must exercise reasonable care and caution for his own safety while engaged in the master's service.

4. MASTER AND SERVANT—*Safe Machinery—Master Bound to Use Ordinary Care in Selecting.*—It is the duty of the master to exercise ordinary care, that is, such care as reasonable and prudent men use under like circumstances, in providing safe and suitable appliances and instrumentalites for the work to be done, and in providing generally for the safety of the servant in the course of his employment, regard being had to the work and the difficulties and dangers attending it.

He is not bound to provide the latest inventions, nor the most newly-discovered appliances. The master is not required to use more than ordinary care no matter how hazardous the business may be in which the servant is engaged.

5. MASTER AND SERVANT—*What is Ordinary Care—How Ascertained—Use of Dynamite.*—Ordinary care depends on the circumstances of the particular case, and is such care as a person of ordinary prudence under all the circumstances, would exercise. This is to be ascertained by the general usages of the business. The master is not held to any higher degree of skill than the fair average of his profession or trade. He is not an insurer of the safety of his servants, and is liable for the consequences, not of danger, but of negligence. The measure of care imposed upon the master for the safety of his servant in the use of dynamite, is that ordinary care which reasonable and prudent men would and do exercise under like circumstances.

6. INSTRUCTIONS—*What should be Given—When Error to Refuse to Instruct.*—A party has the right to have his own instruction given as he offers it, if it clearly and correctly states the law, and is applicable to the facts of the case. If the language of the instruction be objectionable, the court should amend it, or give an instruction of its own on the point, but it is error to refuse to instruct on a material point in a case.

7. EVIDENCE—*Order of Introduction—Discretion in Trial Court—Expert Testimony after Evidence Closed.*—Whether further evidence shall be introduced after the parties have announced that they are through, or after the case has been submitted to the jury, is a question addressed to the sound discretion of the trial court, and its action will not be reversed except for manifest error. But expert testimony should not be allowed at such stage of the case, except under very extraordinary circumstances, and for good cause.

Argued at Wytheville.     Decided at Staunton.

Error to a judgment of the Circuit Court of Wythe county, rendered September 26, 1893, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

This was an action of trespass on the case brought by Samuel Martin's administrator against the Bertha Zinc Company to recover damages for the death of the plaintiff's in-

testate occasioned by an explosion of dynamite. There was a verdict and judgment for the plaintiff for the sum of five thousand dollars. The plaintiff was engaged to work in the mines, or on the track and dump. On the morning of the explosion, a fire was built some ten or fifteen feet from where the intestate was at work. Whether it was built to thaw the dynamite, or for the hands to get warm by, does not clearly appear. But the hands did go there several times that morning to get warm, with the knowledge of the boss of that squad, and without objection from him. While the intestate and others were at the fire, or just before, several sticks of dynamite were brought and placed near the fire to thaw. Shortly thereafter the explosion occurred which resulted in the death of the plaintiff's intestate, and the serious injury of one or more of the other hands. The plaintiff contended that neither his intestate nor any of the other hands had been given any instructions about the handling of dynamite, and that placing dynamite to thaw before a fire in the open air was a very dangerous method; that there were one or more very simple and inexpensive methods of accomplishing the same result, with comparatively little, if any, danger; that one of these methods should have been adopted; that the method actually adopted was directed by the boss in charge of the hands at the mines; and that the company was liable for the resulting injury. One of the chief grounds of controversy was, whether thawing dynamite before a fire in the open air was a dangerous method to adopt.

A number of questions were asked different witnesses, to which objections were made and overruled, and exceptions taken, but it could serve no good purpose to insert them here, as the context cannot be given without unnecessarily extending this statement, and the pertinency of the questions cannot be made to appear without the context. After the evidence was all in, the plaintiff offered five instructions, to which the defendant objected, but the court overruled the

objection, and gave the instructions as asked. They are as follows:

*Instruction No. 1, as given.*

" Duty of Master:

"The court instructs the jury that before using a high dangerous explosive it is the duty of the master to ascertain and make known to his servants the dangers to be reasonably apprehended from its use and the proper method of manipulating it with reasonable safety, and the ignorance of the master as to the dangers to be apprehended from its use, or the proper methods of manipulating it, will furnish no excuse when the master, by the exercise of reasonable diligence, could have obtained such knowledge."

*Instruction No. 2, as given.*

" The court instructs the jury that if they believe from the evidence that it is dangerous to thaw frozen dynamite by an open fire, and that the method of thawing dynamite by an open fire is not reasonably safe, and that such dangers could be avoided or greatly reduced by the use of appliances and methods, which were within easy reach of the master, and that the existence of such danger and the means of avoiding it or greatly reducing it, where known to the master, or by the exercise of reasonable care and diligence on his part could have been known to him, that it was a duty that the master owed his servants to adopt such methods and use such appliances as were reasonably safe, and any other methods which were not reasonably safe will not excuse the master for injuries to the servant resulting therefrom."

*Instruction No. 3, as given.*

"The court instructs the jury that the servant assumes the ordinary risks incident to the service after the master

has used proper care, diligence and caution for the safety and protection of the servant, commensurate with the danger to be reasonably apprehended from the service; and if the master fails to use such care and caution, and an injury results therefrom, it is not a risk incident to the employment, and the master is liable therefor, unless the danger was open and apparent, or the servant had actual knowledge thereof."

*Instruction No. 4, as given.*

" The court instructs the jury that while the master is not required to use the highest degree of care or the latest, most approved, and expensive appliances, yet in using high dangerous explosives, the master owes a duty to his servant to employ experienced agents who know the dangers ordinarily incident to its use, and the proper methods of manipulating it with reasonable safety, to have his servants, whose duties bring them in contact therewith, properly instructed and informed as to such dangers, and to adopt such reasonably safe methods and use such well known and practical appliances to avoid or lessen accidents as are reasonably safe and well adapted to promote safety and give protection to the servant."

*Instruction No. 5, as given.*

" The court instructs the jury that if they shall believe from the evidence that on the day on which plaintiff's intestate, Samuel Martin, was injured, he, the said Samuel Martin, had been placed by the defendant company to work at a place of safety, and that said Samuel Martin (with the knowledge and in the presence of the agent of the defendant company who was in authority over said Samuel Martin) left his said place and went a short distance to a fire and was there injured by the negligence of the defendant company; and if the jury shall further believe from the evi-

dence that the said Samuel Martin, in leaving his said place of work and in going to said fire, had reasonable and proper cause for so doing, and which cause was sanctioned by the defendant company, then the said Samuel Martin, in so doing, was not thereby guilty of such contributory negligence as to bar a recovery in this action."

Thereupon the defendant asked seven instructions to which the plaintiff objected, and the court sustained the objection to all of said instructions except No. 1, and refused to give them, and in lieu of the defendant's instructions numbers 2, 3, 4, 5, 6, and 7, the court gave instructions of its own, marked "Court's Instructions" numbers 2, 3, 4, and 5, to which action of the court the defendant again excepted.

. The instructions tendered by the defendant were as follows:

"No. 1 (as given). The court instructs the jury that negligence cannot be assumed in this case against the defendant company, but the burden of proving negligence is on the part of the plaintiff, who alleges it.

"No. 2 (refused). The court instructs the jury that the degree of caution, care, and diligence exacted by the law of the defendant company, in providing appliances, methods of work, and means of safety for the employees ' in thawing dynamite, was only ordinary and reasonable care, caution, and prudence in providing and adopting reasonably safe appliances and methods in thawing said dynamite. Therefore, if the jury shall believe from the evidence that the method of thawing dynamite by the defendant company, at the time the injury occurred from the explosion complained of, was the method of thawing dynamite before an open fire, in the open air, and if the jury shall further believe from the evidence in this case that the method of thawing dynamite was reasonably safe, then the court instructs the jury that the defendant company was not negligent in using that

mode of thawing dynamite, and the jury will find for the defendant.

" No 3 (refused).   The court instructs the jury that while the master assumes the duty of providing reasonably for the safety of his employees, yet such employee has also the duty to take care of himself; and such employee, if he goes into a dangerous employment, assumes all of the dangers, perils, and accidents that are ordinarily incident to such dangerous employment.   Therefore, if the jury believe from the evidence that the injury complained of in this case was produced by the purely accidental occurrence of the explosion of dynamite, and that the defendant company, in the performance of its duty, had exercised reasonable care, and that the injury occurred under such circumstances, with the use of such methods and appliances, as were reasonably safe and ordinarily used and adopted by other companies using similar dynamite, then there can be no recovery in this case for the plaintiff, and the jury must find for the defendant.

" No. 4 (refused).   The court instructs the jury that where a servant has been assigned to do work at a particular place and wanders voluntarily away from his post of duty, prompted by curiosity, idleness, or otherwise, and is injured, he has no remedy against his employer.   Therefore, if the jury shall believe from the evidence that Samuel Martin, the deceased, was employed by the defendant company to work at drilling earth, on top of a bank at its mines, and that his duty was, with a drill, pick, or shovel, to drill a hole in said earth, and that it was a safe position; and if the jury believe from the evidence that the said Samuel Martin voluntarily and without the direction of the said defendant company or its agents, left said position to which he was assigned, and exposed himself to danger by going to a fire at which dynamite was being thawed by other servants of the defendant company, and that said Samuel Martin was injured by an explosion of said dynamite at said fire, to which he went

voluntarily and without the direction of the defendant company or its servants, then the said Samuel Martin cannot recover for an injury thus sustained.

"No. 5. (refused). The court instructs the jury that if they believe from the evidence that Samuel Martin's post of duty or place of work was not at the fire where the dynamite was being thawed, but that he went there for a purpose unconnected with his business, and without being requested or ordered to go there, and that, by reason of his leaving his post of duty, he was injured, then his own negligence contributed to his death, and the defendent is not liable therefor; and they will find for the defendant.

"No. 6 (refused). The court instructs the jury that it is not necessary for the defendant company to have adopted the most modern methods for the thawing of dynamite, nor such as are safest for use, nor is it necessary that the company should have provided such means or methods as would absolutely insure the safety of its employees; but the court instructs the jury that in the thawing of dynamite it was only necessary for the defendant company to have exercised reasonable and ordinary care, and if the method of thawing said dynamite used by the company was a reasonably safe one, or such as from practical experience had been found to be reasonably safe, then the defendant company was not guilty of negligence in adopting and using such method of thawing its dynamite.

"No. 7 (refused). The court instructs the jury that if they believe from the evidence that thawing dynamite by an open fire is reasonably safe, and the method ordinarily used by persons thawing dynamite, then the defendant was not guilty of negligence in thawing in this way, and the plaintiff cannot recover damages for any injury caused therefrom."

The court's instructions given were as follows:

*" Court's Instructions."*

"No. 2 (as given). The court instructs the jury that the degree of caution, care, and diligence exacted by the law of defendant company in providing appliances, methods of work, and means of safety for its employees in thawing dynamite, was such ordinary and reasonable care, caution, and diligence in providing and adopting reasonably safe appliances and methods in thawing dynamite as were commensurate with the danger which might reasonably be apprehended therefrom; and, if the jury shall further believe from the evidence in this case that the method of thawing dynamite used by the defendant at the time of the injury complained of was reasonably safe, then the court instructs the jury that the defendant company was not negligent in using that mode of thawing dynamite.

"No. 3 (as given). The court instructs the jury that where a servant who has been assigned to work at a particular place, without any reasonable or proper cause for so doing, voluntarily goes away from his post of duty, and is injured in consequence thereof, he has no remedy against his employer. And if the jury shall believe from the evidence that Samuel Martin, the deceased, was employed by the defendant company to work at drilling earth on top of a bank at its mines, and that his duty was, with a drill, pick, or shovel, to drill a hole in said earth, and that it was a safe position; and if the jury shall further believe from the evidence that the said Samuel Martin voluntarily, and without the direction of the defendant company or its agents, and without any reasonable or proper cause for so doing, left said position to which he was assigned, and voluntarily exposed himself to known danger, by going to a fire at which dynamite was being thawed by other servants of the defendant company, and that the said Samuel Martin was injured by an explosion of said dynamite at said fire to which he went

voluntarily, and without the direction of the defendant company or its servants, and without any reasonable or proper cause for so doing; and if the jury further believe from the evidence that the said Samuel Martin in so doing was guilty of negligence which proximately contributed to his injury, then the said Samuel Martin's administrator cannot recover for an injury thus caused.

" No. 4 (as given). The court instructs the jury that in thawing dynamite it was the duty of the defendant company to exercise such ordinary care and caution in the adoption and the use of methods therefor as were reasonably safe and commensurate with the danger which might be reasonably apprehended therefrom; and if the jury shall believe from the evidence that the defendant company, in thawing dynamite at the time of the injury to said Samuel Martin, did exercise such care and caution as is above stated, and that the method of thawing dynamite as used by the defendant company was reasonably safe and commensurate with the danger reasonably to be apprehended, then the defendant company was not guilty of negligence in the adoption and use of such methods.

"No. 5 (as given). The court instructs the jury that a servant entering into a dangerous employment assumes such risks as are ordinarily incident to the employment from causes open and obvious to the servant, the dangerous character of which he had opportunity to ascertain, and he must exercise reasonable care and caution for his own safety while engaged in the master's service; and it is the duty of the master to provide safe, sound, and suitable appliances and instrumentalities for the use of the servant, and to provide generally for his safety in the course of the employment, and to use proper diligence to avoid exposing the servant to extraordinary risk."

*F. S. Blair* and *John C. Blair*, for the plaintiff in error.

*Walker & Caldwell,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

It is assigned as error that, whilst the declaration avers that the defendant's intestate was required by the plaintiff in error to work near by a fire where dynamite was being thawed, and which place of work was improper, unsafe, and dangerous on account of its proximity to the dynamite, the proof shows that the intestate was not at his place of work, but had gone from it to a fire where the dynamite was being thawed from fifteen to fifty feet distant, and received the injuries which caused his death at the fire and not at his place of work, and that therefore there was a variance between the pleading and proof for which the judgment of the court should be reversed and the verdict of the jury set aside. If there was such a variance as that complained of, the objection ought to have been made in the trial court either by objecting to the evidence when offered, or by a motion to exclude after the evidence had been received. Section 3384 of the Code was enacted to obviate the difficulties which frequently arise after a trial has been commenced, when it appears that there is a variance between the evidence and allegations in the pleadings; by allowing the pleadings to be amended upon such terms as to continuance and costs as the court may deem reasonable, or by directing the jury to find the facts, and after such finding, if the court be of opinion that the variance was such as could not have prejudiced the opposite party, it gives judgment according to the right of the case.

The objection now made for the first time should have been made in the court below, so that the plaintiff in that court might have had an opportunity to have moved the court to have adopted the one or the other of the courses provided by the statute. Having failed to do this, we do

not think that the question can be raised here for the first time, and this assignment of error must be overruled.

The assignment of error as to the notice for taking the depositions of witness Walke in this cause and in two other causes by different plaintiffs against the same defendant, was waived in the oral argument.

Errors are assigned as to the action of the court in allowing certain questions to be asked and answered by certain witnesses introduced by the defendant in error as experts, as shown by bills of exceptions Nos. 4, 5, 6, and 7. We see no error in the court's action in allowing such evidence to go to the jury, and those assignments of error must be overruled.

Nor do we see that the court erred in its rulings referred to in bills of exceptions numbered from 8 to 19 inclusive in allowing certain questions to be asked and answered, and in refusing to allow certain other questions to be asked. The assignments of error based upon these bills of exceptions must also be overruled.

The defendant in error moved the court upon the trial of the cause to give five instructions, embodying the law of the case as he contended for it. The plaintiff in error objected to the giving of these instructions, but the court overruled its objection and gave the instructions as asked. The plaintiff in error moved the court to give seven instructions embodying its view of the law of the case. To the giving of these instructions the defendant in error objected, and the court sustained his objections to all of the instructions except No. 1, which was given. After the court had refused to give the instructions of the plaintiff in error numbered from two to seven inclusive, the court gave four instructions of its own, which are called in the record the "court's instructions," and numbered 2, 3, 4, and 5. To the giving of the instructions of the defendant in error, by the court, to its refusal to give the instructions of the plaintiff in error except the first,

and to its giving its own instructions, the plaintiff in error filed its three bills of exception numbered 1, 2, and 3, and upon these three bills of exception are based its first three assignments of error.

We see no error in the court's action in giving instructions Nos. 1. 2, and 3 of the defendant in error. They correctly state the law upon the points upon which they were given.

Instruction No. 4, offered by the plaintiff in error, does not clearly and plainly state the law, whilst the instruction given by the court upon that point does so state it. We think the action of the court in rejecting that instruction, and in giving its own in lieu of it, was correct.

Instruction No. 5, offered by the plaintiff in error, was properly rejected by the court. The intestate of the defendant may have left his work and gone to the fire where the dynamite was being thawed without either being requested or ordered to do so, and yet not have been there improperly. There is evidence in the cause which tends to show that the fire was built for the purpose of allowing the hands to warm by, as well as for the purpose of thawing the dynamite, and that the hands, the intestate of the defendant in error among them, had gone there several times on the morning of the accident with the knowledge of, and without objection by, the foreman or boss in charge of that squad of hands.

Instruction No. 3 of the court, upon the same point, correctly states the law, and was properly given.

That portion of the instruction of the court numbered 5, which defines the duty of a servant when he enters into a dangerous employment, and declares that he " assumes such risks as are ordinarily incident to the employment from causes open and obvious to the servant, the dangerous character of which he had an opportunity to ascertain, and that he must exercise reasonable care and caution for his own safety while engaged in the master's service," is a clear and

correct statement of the law. But the other portion of the instruction, which declares that "it is the duty of the master to provide safe, sound and suitable appliances and instrumentalities for the use of the servant, and to provide generally for his safety in the course of the employment, and to use proper diligence to avoid exposing the servant to extraordinary risk," is plainly incorrect, as it imposes a much higher duty upon the master in providing appliances and instrumentalities for his servant's use than the law imposes. The rule upon the subject in this State is, that it is the duty of the master to exercise ordinary care, that is, such care as reasonable and prudent men use under like circumstances in providing safe and suitable appliances and instrumentalities for the work to be done, and in providing generally for the safety of the servant in the course of the employment, regard being had to the work and the difficulties and dangers attending it. *Richlands Iron Co.* v. *Elkins*, 90 Va. 249, 261; Bailey on Master's Liability to Servant, p. 8 and 9; Bishop on Non-Contract Law, sec. 645.

The instruction given on this point, declares it to be the master's duty to provide not *reasonably* safe, sound, and suitable appliances and instrumentalities for the use of the servant, but it implies that they must be absolutely safe, sound, and suitable, and he is required not to exercise ordinary care in providing generally for the safety of the servant in the course of the employment, but he must do so absolutely. The duty thus imposed by the instruction upon the master for the safety of his servant is a higher degree of duty than is imposed upon the servant for his own protection, and is contrary to reason, as well as to law, for no master can be required to do more for his servant's safety than the servant is required to do for his own safety.

Instruction No. 2, offered by the plaintiff in error, correctly states the law and ought to have been given, and the refusal of the court to give it was error, and reversible error,

unless some other instruction given by the court cured it. A party has the right to have his own instruction given as he offers it, if it clearly and correctly states the law, and is applicable to the facts of the case. In *Rosenbaums* v. *Weeden, Johnson & Co.*, 18 Gratt. at page 799, Judge Moncure, in delivering the opinion of the court, says: "A court is bound to give any instruction asked for by either party, which correctly expounds the law upon any evidence before the jury." *Balto. & Ohio R. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. 447, 468.

The instruction of the court numbered 2 given in lieu thereof, was substantially the same instruction except the addition that the reasonable care required of the master was such as was commensurate with the danger which might reasonably be apprehended from the use of dynamite. If the court had added further, and such ordinary care as reasonable and prudent persons under like circumstances use in thawing dynamite, there would be no objection to the instruction given by the court; but the addition that was made by the court was calculated to mislead the jury, and to make the impression upon them that something more than ordinary care was necessary on the part of the master in providing and adopting methods and appliances for thawing dynamite.

According to the rule in this State, and generally (though in some jurisdictions there seems to be required a higher degree of care), the master is not required to exercise more than ordinary care for the safety of his servant no matter how hazardous the business may be in which the servant is engaged. But whilst the rule of duty upon the master in providing for the safety of his servant is always and invariably the exercise of ordinary care, it is not to be understood that the ordinary care required is the same in all undertakings and under all circumstances. "Ordinary care depends upon the circumstances of the particular case, and

is such care as a person of ordinary prudence, under all the circumstances, would have exercised." This was the doctrine laid down by this court in the case of the *Norfolk & Petersburg R. R. Co.* v. *Ormsby,* 27 Gratt. 455, and which has been reiterated in substance in subsequent cases, as late as the case of *Richlands Iron Co.* v. *Elkins,* 90 Va. 249, 291.

If the court in any other instruction given had instructed the jury that the ordinary care required of the master in providing safe appliances and methods in thawing dynamite, was such care as reasonable and prudent men exercise under like circumstances when using dynamite, it would, perhaps, have cured the defect in the court's instruction. But no such instruction was given, although the plaintiff in error in his instructions numbered 3, 6, and 7 attempted to have the jury instructed upon that point, and whilst the language used in each of those instructions upon that point was objectionable, and they could not have been given as offered, the court ought to have amended them, or if it rejected them, as it did, it was error to give its own in lieu of them without instructing upon that point, which was a vital one in the case. Scientific experts of the highest character and reputation had testified in the case that the thawing of dynamite before an open fire in the open air was very dangerous, and that there were cheap appliances for thawing it which greatly decreased the danger. Practical experts, railroad builders, of character and wide experience, who had been engaged in using dynamite for many years in the building of railroads and other works requiring the use of powerful explosives, testified that the usual and common method of thawing dynamite was before an open fire in the open air, and that they regarded that method as safe and the most practicable, and had known very few instances in which injuries had resulted from dynamite being thawed in that manner.

If the view of the scientific experts were to prevail with the jury, the thawing of dynamite before an open fire in the

open air was gross negligence. If the opinion of the practical experts was to control, that method seemed to be the usual and common one and reasonably safe. The plaintiff in error, if it requested it, had the right to have the court instruct the jury that the measure of ordinary care imposed upon it for the safety of its servants in the use of dynamite, was that ordinary care which reasonable and prudent men would and do exercise under like circumstances.

The degree of care required in such cases, under our law, must be ascertained by the general usages of the business. The reason for such a rule is clearly and forcibly stated in the case of *Titus* v. *Railroad Co.*, 136 Penn. St. 618, 626. In that case it was said: "All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is a test of the latter; for in regard to the style of the implement or nature of the mode of performance of any work, 'reasonably safe,' means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in the employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set a standard which shall, in effect, dictate the customs or

control the business of the community." *Bern* v. *Coal Co.,* 27 West Va. 285, 301.

Instruction No. 4 given for the defendant in error was misleading, and under the facts of the case erroneous. It informs the jury, among other things, that it was the master's duty " to adopt such reasonably safe methods and use such well known and practical appliances to avoid or lessen accidents as are reasonably safe and well adapted to promote safety and give protection to the servant." The evidence in this case showed that the method of the defendant in error in thawing dynamite was before an open fire in the open air, and that he had no appliance for the purpose. It also tended to show that there were practical appliances in use for the purpose of thawing dynamite reasonably safe. There was no charge in the declaration and no evidence in the case that the plaintiff in error was negligent in providing appliances of any kind except as to the thawing of dynamite. The portion of the instruction quoted above could, therefore, have no relevancy to the case unless it referred to the appliances to be used in thawing dynamite. If it did refer to that, it was clearly misleading. The plaintiff in error, as above stated, had no appliances whatever for thawing dynamite, and the very question in issue was whether or not its failure to provide such appliances was negligence. This instruction does not say that it was its duty to adopt reasonably safe methods, or use well known and practical appliances, but it says it was his duty to do both, thus in effect taking from the jury the right to determine whether its method of thawing dynamite before an open fire without such appliances, was reasonably safe. As a general proposition the instruction is correct, but when 'applied to the facts of this case it was clearly misleading and ought not to have been given.

Without discussing further the instructions given and rejected, we have said enough to show what principles of law should govern upon the next trial of the case if the evidence be substantially the same as it was upon the last trial.

Opinion.

The assignment of error based upon bill of exceptions No. 20, is that after the evidence was all in and the instructions had been argued before the court, the counsel for the defendant in error announced that they wanted to introduce some after-discovered evidence, which they stated they had just discovered, to which the plaintiff objected, but the court overruled its objection and allowed the evidence to be introduced. The witness was introduced as a practical expert upon the subject of the use of dynamite, and his evidence covers some thirteen pages in the printed record. No cause was shown for its introduction at that late period of the trial in which it was offered, except that the counsel of the defendant had just then discovered it.

The question of allowing the introduction of evidence after the parties have announced that they are through, or after the case has been submitted to the jury, rests in the sound discretion of the court, and its action will not be held erroneous unless it appears that in the exercise of that discretion it has plainly erred. The evidence allowed to be introduced in this case was expert evidence, and not evidence of any fact affecting the issue in the case. Expert witnesses can ordinarily be had without much difficulty, and the parties are therefore not dependent upon any particular witness by which to make out their case, and should not be allowed to introduce expert evidence after both sides have announced that they are through with their evidence, and further steps have been taken in the case, except under very extraordinary circumstances and for good cause. But as this case has to be reversed upon other grounds, it is unnecessary to say more upon this point, as such a question is not likely to arise upon the next trial.

The judgment in this case must be reversed, and a new trial had in accordance with the views expressed in this opinion.

*Reversed.*