# Richmond.

NORFOLK & WESTERN RAILWAY CO. V. STEVENS' ADM'R.

NOVEMBER 16, 1899.

Absent, Harrison, J.

1. DEATH BY WRONGFUL ACT—*Distribution of Damages.*—The manner in which the damages assessed for the death of a person by the wrongful act of another are to be distributed is no concern of the defendant, and not under the control of the plaintiff, but is a question exclusively for the jury.

2. PLEADING—*Declaration in Tort—Items of Damage.*—In a declaration in an action for damages resulting from the death of a person by the wrongful act of another, it is not necessary to state every matter which may enhance the damages.

3. DEATH BY WRONGFUL ACT—*Damages—Injury to Feelings—Remoteness.*—In an action to recover damages for the death of a son occasioned by the wrongful act of another, evidence of the effect that the news of the death had upon the nervous system of the mother is not admissible. There is no necessary or probable connection between negligence which results in the death of a son, and the consequent nervous condition of his mother.

4. INDEPENDENT CONTRACTOR.—An independent contractor is one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods, and who represents the will of his employer only as to the results of his work.

5. RAILROADS—*Substitution of New Bridge for Old—Independent Contractor—Negligence of Contractor.*—It is not an essentially hazardous undertaking to substitute a new railroad bridge for an old one without the interruption of traffic, and a railroad company may employ an independent contractor to substitute such new bridge, and if care be exercised in the selection of a suitable and reputable contractor, and the company retains no control or direction over

the manner of executing the work, it is not liable for the negligence of the contractor.

6. RAILROADS—*Safe Road-Bed—Non-Assignable Duties—Ordinary Care—How Ascertained—Case at Bar.*—It is the duty of a railroad company to provide suitable and safe appliances, machinery and road-bed for its employees, and this duty is not assignable, but the company is not an insurer of the safety of its employees. It is only bound to exercise ordinary care for their safety, and the degree of care to be exercised in a particular case is to be ascertained by the general usage of the business. In the case at bar it was held that the company was not liable for the negligence of an independent contractor in the faulty construction of a bridge, as it is the general custom of railroads to let such contracts to independent contractors, and the company used due care in the selection of a reliable contractor, exercised no supervision over the manner of doing the work, and, by its contract, guarded as far as possible against the dangers incident to the work.

Error to a judgment of the Hustings Court of the city of Roanoke, rendered March 31, 1899, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson,* and *Smith & King,* for the plaintiff in error.

*Moomaw & Woods,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Plaintiff in error, Norfolk and Western Railway Company, entered into a contract with the Phœnix Bridge Company, by which the latter undertook to put in a new bridge in the place of an old one over South river, a tributary of North river, in the county of Rockbridge, Virginia. The substitution of a new bridge for an old one, without interrupting the traffic upon the road, must be done with caution, and by skillful and capable mechanics, but when reasonable care is exercised it appears from

the proof not to be attended with any particular danger, and is not considered an intrinsically hazardous undertaking. The evidence shows that the Phœnix Company does an extensive business in the construction of bridges, and is considered careful, reliable, and competent. The contract between it and the Norfolk and Western Railway Company contains the stipulations and conditions which have been suggested by experience as tending to promote the safety of those exposed to the risks incident to the construction of a bridge under such circumstances.

Upon the occasion of the accident which is the subject of this suit, the bridge was approaching completion. One span was finished, and another had progressed so far that, in the opinion of the Phœnix Bridge Company, it was safe to remove the whole of the false work which had supported the bridge while the work was being done upon it. Under these circumstances, a train of the plaintiff in error approached at the stipulated rate of speed, not exceeding four miles per hour, passed over the completed span in safety, and crushed through the other, killing Joseph Stevens, the fireman. His administrator brought suit against the railway company, and recovered a judgment in the Circuit Court of Pulaski county for $5,000, and the case is now before us upon certain errors assigned during the progress of the trial.

The first bill of exceptions is to the admission of evidence that the father and mother of intestate were both living, and that the news of the death of her son threw the mother into a highly nervous condition, so that her death was momentarily expected, and from which she had not recovered at the time of the trial.

The second bill of exceptions is to the admission of the testimony of Dr. Buckner, who stated that, since the death of her son, the mother had been in a very nervous state, and in a very "run down condition," due, in the opinion of the physician, to the death of her son, and that she suffered with a severe attack of bronchitis, probably caused by the nervous condition following the death of her son.

The objections to the admissibility of this evidence presented in bills of exception Nos. 1 and 2, may, with propriety, be considered in connection with the objection to plaintiff's instruction No. 6, which is as follows:

" The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover, they may assess damages for his killing at such sum as they may deem fair and just under all the circumstances of the case, such damages not to exceed $10,000.  The court further instructs the jury that, in ascertaining the damages, they are not limited to the mere pecuniary damages sustained by the parents of said Joseph Stevens, by the death of said Joseph Stevens, but may add to such damages such sum as they may deem fair and just by way of solace and comfort to his said parents for the sorrow, suffering, and mental anguish occasioned them by his death."

Plaintiff in error contends that the evidence should not have been admitted, because: " First, the father being alive, the mother would not be entitled to receive, under the statute, any portion of the damage found by the verdict of the jury.

" Second, that no special damage could be recovered for the physical condition of the mother of the plaintiff's intestate, because no such damage was claimed in the declaration.

" Third, because such damages were too remote, and the evidence in regard thereto was otherwise illegal and irrelevant."

As was said by Judge Staples in *B. & O. R. Company* v. *Wightman's Adm'r*, 29 Gratt. 441: " The manner in which the damages are to be distributed is no concern of the defendant, and not under the control of the plaintiff.  It is a question for the jury exclusively, not involved in the issue."  The first objection is overruled.

Nor do we think the second objection well taken, for " there is no rule of law which compels a party to state in his declara-

tion every matter which may enhance the damages." *Railroad* v. *Wightman, supra.*

The third objection, however, to the admissibility of the evidence, is well taken. There was no necessary or probable connection between the negligence which resulted in the death of the plaintiff's intestate and the nervous condition of his mother, which resulted in an attack of bronchitis. *Fowlkes* v. *Southern Ry. Co.*, 96 Va. 742. This ruling excludes from the case the only evidence of physical injury to the mother as consequent upon the death of her son, and the sixth instruction would therefore be erroneous as being predicated upon evidence improperly admitted. Whether or not the merely mental anguish of the mother could with propriety be considered as an element of damage we shall leave as an open question, as was done in the case of *B. & O. Ry. Co.* v. *Wightman's Adm'r, supra.*

That the Phœnix Bridge Company was an independent contractor is clear upon the law and evidence, and is scarcely controverted by the defendant in error. In the case of *Bibb's Adm'r* v. *N. & W. Ry. Co.*, 87 Va. 711, where the contract with the railroad company was essentially the same as that under consideration, an independent contractor is defined to be " one who renders service in the course of an occupation and represents the will of his employer only as to the result of his work and not as to the means whereby it is accomplished." The syllabus of that case is as follows: "A railroad company employs, for an agreed price, a skillful contractor to repair, according to specifications and with privilege reserved of supervision by its engineer, a bridge in such a manner that the passing of its trains should not be prevented, but they were not to pass except upon signal from contractor's foreman. On day of accident, upon such signal, a train was proceeding across the bridge, when the engine broke down one of the spans, and, falling, killed the plaintiff's intestate, who was a servant of the contractor and engaged at the time in working on the bridge. *Held:* The railroad company is not liable for the injury." To a like effect see Sher. & Red. on Neg., sec. 164.

In Elliott on Railroads, sec. 1063, the law is stated as follows: "An independent contractor may be defined as one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own method to accomplish it, and representing the will of the company only as to the result of his work. Generally, where an independent contractor is employed to perform a work lawful in itself and not intrinsically dangerous, the company, if it is not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor, and in order that the company shall be liable in such a case, it must appear that it either exercised, or reserved the right to exercise, control over the work, or had the power to choose, direct, and discharge the employees of the contractor. In general, it may be said that the liability of the company depends upon whether or not it has retained control and direction of the work."

The case of *Bibb's Adm'r* v. *N. & W. Ry. Co., supra,* would be conclusive of this case upon all points were it not that the accident, which was the subject-matter of that suit, resulted in the death of a servant of the independent contractor, while in this case the victim was a fireman and employee of the railroad company, and upon that distinction counsel for the defendant in error seems to rest his right to recover. It is argued with great earnestness that it is the duty of a railroad company to provide suitable and safe appliances, machinery, and roadway for its employees, and that this duty is one which cannot be assigned to another, being a primary obligation resting upon the company itself, all of which is true, and is established by abundant authority. See *Norfolk, &c. R. Co.* v. *Nuckol's Adm'r,* 91 Va. 193; *Norfolk, &c. R. Co.* v. *Houchins' Adm'r,* 95 Va. 398; and *Bertha Zinc Co.* v. *Martin's Adm'r,* 93 Va. 791.

In the latter case, Judge Buchanan, speaking for the court, said: "According to the rule in this State, the master is not required to exercise more than ordinary care for the safety of his servant, no matter how hazardous the business may be in which the servant is engaged. But whilst the rule of duty upon the

master in providing for the safety of his servant is always and invariably the exercise of ordinary care, it is not to be understood that the ordinary care required is the same in all undertakings, and under all circumstances. ' Ordinary care depends upon the circumstances of the particular case, and is such care as a person of ordinary prudence, under all the circumstances, would have exercised.' "

And at page 807: " The degree of care required in such cases, under our law, must be ascertained by the general usages of the business," and cites with approval from the case of *Titus* v. *Railroad Co.*, 136 Pa. St. 618, 626, where it is said: "All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is a test of the latter; for in regard to the style of the implement, or nature of the mode of performance of any work, ' reasonably safe ' means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in the employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set a standard which shall, in effect, dictate the customs or control the business of the community."

It is shown in the evidence that it is the general custom of

railroad companies to construct bridges as was done in this case, and that it is not an essentially hazardous undertaking; that while it requires care to substitute a new bridge for an old one, without the interruption of traffic, with ordinary care it may be done with entire safety. It further appears that the Phœnix Bridge Company is an established and reputable concern, largely engaged in such work, and has the confidence of the business public. As we have before said, the contract between the bridge company and the railroad company seems carefully to have guarded, as far as human foresight could do, against the dangers incident to the work. If the bridge company had complied strictly with its contract, the accident would not have occurred. It was due to the removal of the false work before a sufficient number of rivets had been put into the new bridge to sustain the train that undertook to pass over it; but the railroad company is not responsible for the negligence of the Phœnix Bridge Company. It is responsible only for its own negligence, and that of its agents and employees, while the Phœnix Bridge Company was an independent contractor. See the numerous authorities cited and discussed upon this subject in *Bibb's Adm'r* v. *N. & W. Ry. Co., supra.*

The railroad company is not an insurer of the safety of its employees. It is bound by law, as is clearly shown in *Bertha Zinc Co.* v. *Martin, supra,* only to exercise ordinary care for their safety, no matter how hazardous the business may be in which the servant is engaged, and the degree of care in the particular case is to be ascertained by the general usages of the business.

We are of opinion that the judgment should be reversed, and that enough has been said to enable the trial court to present the law to the jury in conformity with the views herein expressed, without prolonging this opinion by a discussion of the instructions in detail as given or refused at the former trial.

*Reversed.*