# Richmond.

PERSINGER'S ADMR'X v. ALLEGHANY ORE & IRON CO.

JANUARY 21, 1904.

Absent, Keith, P., and Cardwell, J.

1. MASTER AND SERVANT—*Safe Place—Dangers Not to be Anticipated.*—
It is the duty of the master to use ordinary care to provide his
servant a reasonably safe place in which to work. What is ordi-
nary care depends on the circumstances of the particular case and
is such care as a person of ordinary prudence would exercise under
like circumstances. It is the master's duty to anticipate and pro-
vide against consequences that may be reasonably expected to
occur, but he is not bound to foresee and provide against that
which reasonable and prudent men would not expect to happen.
The accident in this case was not such as could reasonably have
been expected to occur.

Error to a judgment of the Circuit Court of Botetourt county,
in an action of trespass on the case, wherein the plaintiff in error
was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Benjamin Haden,* for the plaintiff in error.

*P. H. C. Cabell* and *A. A. Phlegar,* for the defendant in
error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages for the killing of William D. Persinger, caused, as his administratrix claims, by the defendant company's negligence.

Upon the trial of the cause in the Circuit Court, the defendant, without introducing any testimony, demurred to the plaintiff's evidence. The court sustained the demurrer, and rendered judgment for the defendant. To that judgment this writ of error was awarded.

The material facts are the following: The defendant owns and operates, among other things, machinery for washing ore, and Mr. Persinger was employed by the defendant to oil the machinery, and to do such other work as he might be directed to perform. The part of the washer in which Mr. Persinger was killed was at least six feet wide, and about thirty feet long, as counsel seem to agree. The depth of the box does not appear from the record. Extending through this box lengthwise were two logs, parallel to each other, one foot each in diameter, and about thirty inches apart. To these logs were attached spiral flanges or paddles, about eight inches long. The logs ran east and west, and to the west end of each log was attached an iron gudgeon, which rested on the end of the box. Upon these gudgeons were fixed gear wheels, which were driven by means of a main shaft by a steam engine located on the south side of the box. The ore as it came from the mines was dumped into the box through which flowed a stream of water. The logs revolved in opposite directions. The paddles on them stirred up the ore, and by reason of their spiral arrangement forced the ore to one end of the box, the water carrying off the dirt to the other end. On the south side of the box and thirty-two inches from the west end of it, was a pulley on the engine shaft, over which was a band which operated the washer. This shaft from the engine projected into the box, unnecessarily, twenty-eight inches, the

end of it reaching an inch or two beyond the north side of the nearest log. In the end of the shaft was a key set, or groove, for fastening the pulley or wheel which might be placed thereon. On one of the corners of the key set, and on the inner side thereof, was a little "jagger" or point of iron, about one-eighth of an inch by three-sixteenths of an inch in size, and made apparently by a blow from a hammer on the end of the shaft. From the end of the shaft to the north side of the box was about three and one-half feet.

On the day of the accident one of these logs broke, and Mr. Persinger was ordered to aid other employees in removing the logs from the bed when not engaged in oiling the machinery of the washer, which continued its work except in that bed. In order to remove these logs, it was necessary to take the gear wheel off the west end of the log over which the engine shaft projected. There was some difficulty in getting the key out which held the wheel in its place. Three other men at least had attempted to get it out. Two of them had gone out of the bed to get a more suitable implement to work with. The other employee, Rock, and Mr. Persinger attempted to get the key out, and were unable to do so with the key drift which they had. They determined to go out of the box also, and get a more suitable key drift, Rock leaving first. As Mr. Persinger was going out, his overall jacket caught upon the "jagger" on the end of the main shaft, which was making from seventy-five to one hundred revolutions per minute, and was wrapped around it, and he was dragged or whirled around the shaft and killed.

The plaintiff charges that the defendant was negligent in unnecessarily and improperly allowing the main shaft to extend into the bed where the accident occurred, and in permitting the jagger to remain on the end thereof, and in operating the shaft while its employees were removing the logs and repairing the bed in which they were.

The rule is well settled that it is the duty of the master to

exercise ordinary care in providing a reasonably safe place in which his servants are to work. *Robinson* v. *Dininny,* 96 Va. 41, 42, 30 S. E. 442; *McDonald's Adm'r* v. *N. & W. R. R. Co.,* 95 Va. 98, 105, 27 S. E. 821; *Bertha Zinc Co.* v. *Martin,* 93 Va. 791, 22 S. E. 869; *N. & P. R. R. Co.* v. *Ormsby,* 27 Gratt. 455.

Ordinary care depends upon the circumstances of the particular case, and is such care as persons of ordinary prudence would under the circumstances have exercised. *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763-4, 40 S. E. 54; *Bertha Zinc Co.* v. *Martin,* 93 Va. 791, 22 S. E. 869; *N & P. R. R. Co.* v. *Ormsby,* 27 Gratt, 455.

If the accident which occurred was one at all likely to happen, if it was a probable consequence that an employee working in the bed would be injured or killed by having his clothing caught upon the little "jagger" on the end of the revolving shaft, as was the plaintiff's intestate, the trial court erred in sustaining the defendant's demurrer to the evidence. But can the accident be said to be one which ordinarily prudent men would have been likely to anticipate?

The revolving shaft which extended into the bed further than was necessary was fully exposed to sight. The "jagger" on which the clothing of the deceased caught was in size not over one-eighth of an inch by three-sixteenths of an inch, was on the inner side of the key set, and so small that you had to look closely to see it. The gear wheel which Mr. Persinger and other employees were trying to remove from the log was thirty-two inches from the end of the shaft, and the space through which he had to pass in going out of the box north of the end of the shaft was three and one-half feet. It is insisted by counsel for the plaintiff that the box was only some forty inches deep, and that the cover or floor on top of it made it necessary for the employees working in it to move about in a stooping position, and prevented them from going out of the box except through

the space between the ends of the paddles upon the logs, which was only about fourteen inches wide, and very near the end of the shaft.

The evidence does not sustain this contention. It is apparent from the questions asked the witnesses, as well as from their answers, that the top or floor over the box did not in its then condition interfere with the employees in doing their work, or in going in or out of the box.

One of the witnesses, and the only one who testifies upon the point, states that he had been foreman of the washer for about fifteen months, and that he would not have thought that jagger would catch clothing, or that it was likely to do so, but for the fact that it had done so, and but for the accident he would not have thought that it was necessary to have boxed the end of the shaft to have avoided any probability of harm. After the accident happened, it could be readily seen how the accident could have been avoided by boxing the end of the shaft, and that was done. But, as was said by Judge Cooley, in *Sjogren* v. *Hall,* 53 Mich. 274, 278, 18 N. W. 812, 814, "the fact that it" (the accident he was considering) "was avoidable does not prove that there was fault in not anticipating and providing against it. If a farm laborer falls from the hay mow, the fall does not demonstrate that the farmer was culpable for not railing the mow in. A man stumbling in a blacksmith shop might have his hand or even his head thrown under the trip-hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injury impossible. . . . . If the fact that prevention was possible is to render the employer liable, then he may as well be made an insurer of the safety of those in his service in express terms, for to all intents and purposes he would in law be insurer, whether nominally so or not."

It is right that the master should be required to anticipate and guard against consequences that may reasonably be expected to occur, but it would violate every principle of justice or law if he should be compelled to foresee and provide against that which reasonable and prudent men would not expect to happen.

We are of opinion that the evidence does not show that the death of the plaintiff's intestate was the result of the defendant's negligence. The judgment of the Circuit Court must, therefore, be affirmed.

*Affirmed.*