## Richmond.

### SOUTHERN RAILWAY CO. v. LEWIS.

March 10, 1910.

Absent, Buchanan and Whittle, JJ.

1. MASTER AND SERVANT—*Safe Place—Ordinary Care to Provide—Usage as Standard of Care.*—It is the duty of the master to use ordinary care to provide his servant a reasonably safe place in which to work. The duty is not absolute. He is not required to provide, but to use ordinary care to provide; and whether or not such care has been used is to be determined by the general usages of the business. The jury are not to be turned loose to fix a standard of care of their own, and thereby to dictate the customs and usages of business, but to determine whether the conduct of the master conforms to such custom and usage. If it does, the master is not negligent. He is responsible for the consequences of negligence, but not of mere danger.

2. RAILROADS—*Safe Place—Location of Switch Light—Usage of Railroads.*—Where it is sought to hold a railroad company liable for an injury inflicted on a brakeman by being struck by a switch light on a railroad yard, it is error to instruct the jury to find for the plaintiff if they believe that the injury resulted from placing the switch light in too close proximity to the track. This leaves the jury to determine, from their own judgment, what constitutes "in too close proximity," whereas the question is one of ordinary care on the part of the company in view of custom and usage of the business.

3. MASTER AND SERVANT—*Safe Appliances—Test of Negligence—Usage.* The master is not obliged to furnish his servant with absolutely safe appliances, but to use ordinary care to furnish those that are reasonably safe, and among the latter class he has the right of selection. He is not an insurer of the safety of the servant. The unbending test of negligence in the selection of appliances is the ordinary usage of the business.

4. RAILROADS—*Switch Stand—"Standard" Switch Stand—Inspections— Harmless Error.*—In an action to recover for a personal injury inflicted by coming in contact with a switch stand, where a

witness testified that the stand was made by a designated man-
ufacturer with their "standard" length rods, and was such as.
was used by the defendant and other railroad companies, an
instruction which spoke of the stand as a "standard" switch.
stand was not prejudicial to the plaintiff.

Error to a judgment of the Corporation Court of the city of
Danville in an action of trespass on the case.    Judgment for the
plaintiff.    Defendant assigns error.

*Reversed.*

The opinion states the case.

*William Leigh,* for the plaintiff in error.

*Peatross & Harris* and *B. H. Custer,* for the defendant in
error.

Harrison, J., delivered the opinion of the court.

This action was brought by W. T. Lewis to recover damages.
for injuries sustained by him, which he alleges were occasioned
by the negligence of the Southern Railway Company.    There
was a verdict and judgment in favor of the plaintiff, which this.
writ of error brings under review.

It appears that the plaintiff was, at the time of this accident,
in the employment of the defendant company as brakeman on
in the employment of the defendant company as brakeman on its
yards at Danville.    The crew with which he was working, con-
sisting of an engineer, conductor, another brakeman and him-
self, were engaged in shifting cars.    As one of the cars passed
the plaintiff he caught the grab-iron on the side of the car to pull
himself up, but before this was accomplished he was, according
to his statement, struck on the back or near the side by the switch
target, which is the lamp on the switch pole, and knocked off,
thereby sustaining the injury complained of.    No one saw the
accident, and it is by no means clear how it happened.    The
theory of the defendant is that it resulted from a lack of care
on the plaintiff's part.    It is not alleged that the train was im-

·properly operated, or that the car on which the plaintiff was riding was out of repair or of an improper width, ·or that the switch was out of repair. The sole negligence charged is that the defendant company placed and maintained the switch, which it is alleged struck the plaintiff, too close to its track, and that the switch was too high. The evidence shows that the appliance in question was a "Ramapo" switch stand, that was in common use by the defendant and other railroads in their yards; that it was placed seven feet from the center of the track, which was the distance that all such switches were placed from the track by the defendant and other railroads, leaving a space of two feet between the lamp and the side of the car, which gave a safe and proper clearance for passing trains; that the switch in question was four feet and one inch high, including the lamp or target on top, and that this was the height of all such switches used on yards by the defendant and other railroads. Not only is the switch stand in question shown to be one of a class in common use by the defendant and other roads, and situated at a distance from the track commonly adopted by the defendant and other roads, but it appeares that the point of its location was where the greatest amount of work was done on the yards, and that it had been in that location for two years or more without complaint or accident to anyone.

Instruction No. 1, given for the plaintiff, tells the jury that it was the duty of the defendant to furnish the plaintiff a reasonably safe place for the performance of his ·duties. This is true, but as a statement of the law applicable to this case it is only partially true. It leaves out of view altogether the further important limitation upon the master's duty, that he is only bound to exercise ordinary care for the safety· of his servant. The instruction as given is well calculated ·to mislead the jury by conveying to their minds the idea that an absolute duty rested upon the master to furnish a· reasonably safe place, whereas his duty was discharged when he had exercised ordinary care to furnish a reasonably safe place.

Ordinary care is to be determined by the general usages of the business, but the instruction, as given, leaves the jury without guide to decide what is a reasonably safe place, with no regard to the degree of care that may have been exercised in its selection. *Bertha Zinc Co.* v. *Martin,* 93 Va. 791, 22 S. E. 869, 70 L. R. A. 990; *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54; *Norfolk Traction Co.* v. *Ellington,* 108 Va. 245, 61 S. E. 779.

Again, in the latter part of this instruction, the jury are told that if they believe from the evidence that the plaintiff sustained his injuries while using reasonable care in the performance of his duties, and that his injuries resulted from the fact that the switch stand and lamp thereon were placed in too close proximity to the railroad track, they must find for the plaintiff. This leaves the jury to determine what was "in too close proximity." They are not told that if the switch stand and lamp thereon was *negligently* placed too near, or from lack of ordinary care was placed in too close proximity, or that if they believed it was placed nearer than was usual and customary with the defendant and other railroad companies, the defendant was liable; but they are left to fix their own standard as to how close a switch should be placed to a railroad track. This was error. Juries must determine the responsibility of individual conduct, but they cannot be left, without guide, to fix a standard which, in effect, dictates the customs and usages of business. There can be no liability upon the master unless he is shown to have been negligent. He is responsible for the consequences, not of danger, but of negligence. This fundamental pre-requisite to any liability is ignored throughout the instruction under consideration, and the defendant is practically made an insurer of its employees, notwithstanding the established fact that it has conducted its business in a manner shown by long experience to be reasonably safe, and has conducted it as others, governed by their experience, have conducted a like business.

Instruction No. 4, asked for by the defendant, and refused,

was as follows: "The court instructs the jury that ordinary care is such care as reasonably prudent men exercise in the conduct of a like business, and if they believe from the evidence that the switch stand at which the plaintiff was injured was a standard switch stand in common use by the defendant company and by other railway companies, that it was placed no nearer the track of the defendant company than is usual and customary with said defendant company and other railroad companies, that said switch stand was in good order, and the car upon which plaintiff was riding was of the ordinary and usual width of cars used by said defendant company and other companies, and in good order, then they must find for the defendant."

This instruction was well warranted under the pleadings and evidence in this case, and should have been given. It tells the jury that if the defendant had adopted and furnished a switch stand of the character usually used by itself and others in like business, and placed it according to the ordinary usages and practice of the business, it was not liable. As already pointed out, the law only imposes upon the master the duty of using ordinary care to provide the servant with reasonably safe and suitable appliances and instrumentalities for the work to be done. The right of selection among reasonably adequate and safe methods rests with the master. He is not required to furnish the servant with the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for in regard to the style of the implement or nature of the mode of performance of any work, "reasonably safe" means, safe according to the usages, habits and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. These principles have been reiterated by this court through a

long line of decisions. *Bertha Zinc Co.* v. *Martin, supra; Norfolk Traction Co.* v. *Ellington, supra.*

Objection is made to this instruction that it uses the term "standard" switch stand. The witness, in speaking of this appliance, says: "These switches are made by the Ramapo people with their standard length rods, and those same length rods are used on other roads." It is not perceived how the use of the term "standard" in speaking of the switch could possibly have prejudiced the plaintiff; it would seem to have rather exalted the measure of duty required of the defendant. The use of the term, however, was unnecessary and on another trial it can be omitted from the instruction.

Objection is made to the action of the court in giving and refusing other instructions. Consideration of these objections would involve an unnecessary repetition of what has been already said. On another trial, if the evidence be the same, the instructions given can be made to conform to the principles herein announced.

The judgment complained of must be reversed, the verdict of the jury set aside, and a new trial granted, to be had not in conflict with the views expressed in this opinion.

*Reversed.*