# Wytheville.

## Potomac, Fredericksburg & Piedmont Railroad Co. v. Chichester, Administrator.

### June 15, 1910.

### Absent, Harrison, J.

1. Master and Servant—*Safe Place—Choice of Methods.*—It is the duty of the master to use ordinary care to provide his servant a reasonably safe place in which to work, considering the character of the work to be done, and for an injury to the servant resulting from a failure so to do, the master is liable. But the right of selection among reasonably safe methods rests with the master. He is not required to adopt the newest and best, but he performs his duty if he adopts those which are reasonably safe.

2. Railroads—*Sidings—Construction—Constitutional and Statutory Provisions.*—The location of a siding or switch for freight purposes (where the safety of passengers and the public is not involved) as to its curves and grades, is ordinarily an engineering question which a railway company is entitled to settle for itself, and it is error, therefore, to submit to a jury the question whether or not a railway company was negligent in the method it adopted in constructing such a siding. Nor is this question affected by the constitutional and statutory provisions of this State (Constitution, section 162; Code, 1904, section 1294-k). These provisions do not prevent railroad companies from constructing their switches in any manner they may prefer, which is reasonably safe, nor change the rule that any risk that is due merely to the character of the switch is one of the risks of the employment. The effect of those provisions was merely to abrogate the previously existing rule which forbade the servant's recovery if he knowingly used defective machinery, and to declare that such knowledge, of itself, should not bar a recovery.

3. Master and Servant—*Railroads—Use of Siding—Safe Methods—Usage of Business.*—Where the evidence shows that the method

adopted by the defendant railroad company of handling its cars on a siding was a reasonably safe one, and had been used for many years without injury to anyone, and was in common use on railroads, it is error to submit to the jury, in an action for a personal injury to a servant, the question whether or not such method was a negligent one. The test of negligence in such cases is the usage of the business, and juries will not be allowed to set up a standard of their own to control the business of the country.

4. MASTER AND SERVANT—*Railroads—Negligence—Overloaded Cars—Defective Appliances.*—Whether or not a car was dangerously overloaded, or its brakes were in a defective condition, and, if so, whether they were the proximate cause of the injury complained of, are proper questions for the jury in an action for a personal injury to a servant, where there is evidence tending to prove those facts and that the overloading was done with the knowledge and consent of the defendant company.

5. WITNESSES—*Credibility—Competency.*—The fact that a witness for the plaintiff received more than his services in connection with the case were worth, and was to receive more if the plaintiff recovered, goes to his credibility and not to his competency.

6. EVIDENCE—*Partly Admissible—General Objection—Motion to Strike Out.*—The contention of the plaintiff being that a brake chain was in a defective condition, and a witness introduced by him having testified positively and clearly that one link in the chain was longer than the others, his evidence on this point was admissible as tending to prove the plaintiff's contention and will not be stricken out on the motion of the defendant, although he testified upon other matters as to which he seems to have had but little knowledge. Where evidence is offered, a portion of which is admissible and the other not, and the objection to it is general, a motion to strike out should be overruled.

Error to a judgment of the Circuit Court of Orange county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*St. George R. Fitzhugh*, for the plaintiff in error.

*E. H. DeJarnette, Jr.*, for the defendant in error.

Buchanan J., delivered the opinion of the court.

This is an action to recover damages from the Potomac, Fredericksburg and Piedmont Railroad Company for the death of Charles S. Waller, an employee of the defendant company, caused by its alleged negligence.

The grounds of negligence relied on for a recovery are in substance, (1) that the switch or "wye" upon which the accident occurred was not properly constructed as to its grades or curves; (2) that the method adopted for handling the cars upon the switch or "Y" was dangerous; (3) that the brake on the car from which the plaintiff's intestate fell or was thrown was out of repair; and (4) that the said car was overloaded.

The defendant company operated a narrow gauge railroad between Fredericksburg and Orange Court House. At Tinder's, one of its stations on the road, there was a switch in the shape of a "Y." On the east leg of this "Y" freight cars were loaded with timber and lumber and brought down to or near the main track by hand. In February, 1908, there was standing on the east leg of the "Y" one of the defendant company's cars loaded with lumber. Upon the arrival of one of its trains at that station, the conductor directed the plaintiff's intestate and another brakeman to bring the car down towards the main track, so that it could be attached to the train and carried to Fredericksburg. Both of the brakemen ran toward the car, but the plaintiff's intestate reached it first, boarded it, released the brakes and started it down the grade. After the car had run a short distance, he applied or attempted to apply the brakes, but finding that the speed of the cars was not much checked, in a further effort to apply the brakes, or in the act of jumping off to avoid collision with another car a short distance below (it does not clearly appear which), he slipped and fell in front of and was run over by the car (No. 12) which caused his death.

The most material matter involved in the case and one of much importance is as to the action of the court in submitting to the jury the question, whether or not the switch or "Y," as to its grades and curves, was properly constructed. It is not contended that the switch or "Y" was out of repair, but that the manner in which it was constructed and operated rendered it unsafe and dangerous.

The curves in the east leg of the "Y" where the cars were brought down by hand, or by gravity, were sharp—so much so that the engines then in use upon the road could not run over it to the point where car No. 12 was loaded and standing. The grades upon this part of the "Y" were heavy—at some points between four and five *per cent*. This had been substantially the condition of the east leg of the "Y" for more than fifteen years. During that time cars had been brought down by hand almost every day, or at least several times a week, and frequently two or three at one time, by one brakeman, without personal injury to anyone, though on several occasions those in charge of such cars had lost control of them or were unable to prevent them from running against or into other cars standing on the "Y." The evidence shows that the "Y" could have been constructed with curves less sharp and grades less heavy, and that plans for a new "Y" had been made by the defendant's engineer some six or seven years before and the west leg of the "Y" rebuilt according to that plan.

It is a general principle of law that the master shall use ordinary care to provide a reasonably safe place in which his servant is to work, considering the character of the work in which the servant is engaged, and the master will be held liable for injuries to the servant which result from failure to exercise such care. But the right of selection among reasonably safe methods for doing his work rests with the master. He is not required to adopt the newest and the best, but he performs his duty if he adopts those which are reasonably

safe. *N. & P. Traction Co.* v. *Ellington's Admr.*, 108 Va. 245, 249-50, 61 S. E. 779, 17 L. R. A., (N. S.) 117, and cases cited.

The general rule seems to be that the location of a siding or switch for freight purposes, as to its curves and grades, is ordinarily an engineering question which a railway company is entitled to settle for itself.

In the case of *Tuttle's Admx.* v. *Detroit, &c., Ry. Co.*, 122 U. S. 189, 30 L. Ed. 114, 7 Supt. Ct. 1116, one of the grounds of negligence relied on for recovery was that the railway company, in the construction of a "boot-jack" siding, negligently and unskilfully constructed the same with so sharp a curve that the draw-heads of the cars failed to meet and passed each other, thereby causing the death of the plaintiff's intestate while coupling the cars. In discussing that ground of alleged negligence, the court said: "We have carefully read the evidence presented by the bill of exceptions, and although it appears that the curve was a very sharp one at the place where the accident happened, yet we do not think that public policy requires the courts to lay down any rule of law to restrict the railroad company as to the curves it shall use in its freight depots and yards, where the safety of passengers and the public is not involved, much less that it should be left to the varying and uncertain opinions of juries to determine such an engineering problem. . . . The interest of railroad companies themselves is so strongly in favor of easy curves as a means of facilitating the movements of their cars, that it may well be left to the discretion of their officers and engineers in what manner to construct them for the proper transaction of their business in yards, etc. It must be a very extraordinary case, indeed, in which their discretion in this matter should be interfered with in determining their obligation to their employees."

The rule of law announced by the Supreme Court of the United States in that case was approved by this court in *N. & W. Ry. Co.* v. *Cromer*, 101 Va. 667, 671, 44 S. E. 898. In that

case it was said: "Courts and juries cannot dictate to railway companies a choice between methods, all of which are shown to be reasonably adequate for the purposes intended to be subserved. Thus to subject them to the varying and uncertain opinions of juries in questions of policy, and to substitute the discretion of the latter for their discretion, would be wholly impracticable and would prove alike disastrous to the public and the companies." See also, generally, *Boyd* v. *Harris*, 176 Penn. 484, 35 Atl. 222-3; *C. & E., &c., R. C.* v. *Driscoll*, 176 Ill. 330, 52 N. E. 921-3; *Bethlehem Iron Co.* v. *Weis*, 100 Fed. 45, 40 C. C. A. 270; *Gilbert* v. *Burlington, &c., Ry Co.*, 128 Fed. 529, 63 C. C. A. 27.

We are of opinion, therefore, under the facts of this case, that the court erred in submitting to the jury the question, whether or not the defendant company was negligent in the method it had adopted for constructing the switch upon which the injury occurred.

The constitutional and statutory provisions (Constitution, sec. 162; Va. Code, 1904, sec. 1294-k) do not affect this question. The effect of those provisions was not to take away from the railroad company the right to carry on its business in its own way and to adopt any method of constructing its switches it might prefer, which were reasonably safe; nor do they change the rule, that any risk that was due merely to the character of the switch was one of the risks of the employment. The effect of those provisions, as was held in *Cheatwood's Case*, 103 Va. 356, 49 S. E. 489, was merely to abrogate the previously existing rule, which forbade the servant's recovery if he knowingly used defective machinery, etc., and to declare that such knowledge, of itself, should not bar a recovery.

We are of opinion, also, that the court erred in submitting to the jury the question, whether or not the defendant was negligent in the method of handling cars on the switch. That method was proved to be reasonably safe, and had been used for

many years without personal injury to any one, and was in common use.

"Absolute safety," as was said by the court in *Norfolk, &c. Co.* v. *Ellington's Admr., supra,* "is unattainable, and employers are not insurers. They are liable for the consequences not of danger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. . . . . The test of negligence in the employer is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set a standard which shall in effect dictate the customs or control the business of the community."

There was no error in the action of the court in submitting to the jury, as was done in plaintiff's instruction No. 9, the question whether or not the car No. 12 was dangerously overloaded, or its brakes were defective, and if so whether or not such dangerous overloading or defective condition of the brakes was the proximate cause of the death of plaintiff's intestate. There was evidence tending to prove that the car was overloaded with the knowledge and consent of the defendant company, and that the brakes were in a defective condition.

Another error assigned is to the action of the court in refusing to exclude the evidence of Cave Anderson, one of the plaintiff's witnesses, on the ground that the witness had acknowledged that he had been paid ten dollars by the plaintiff's attorney to make a trip to Fredericksburg to examine the condition of the brakes of the car which ran over the plaintiff's intestate, and was to receive thirty dollars more if the plaintiff made a recovery in the case.

The fact that the witness had received more than his services were worth and was to receive an additional sum in the event the plaintiff was successful, went to the witness' credibility and not to his competency.

The court refused to exclude the evidence of Shannon, another witness of the plaintiff, because his answers to questions asked him showed that "he was a perfect ignoramus as far as any knowledge of the brake machinery" on the car was concerned.

Although the witness upon some matters as to which he testified seems to have had little knowledge, he testified positively and clearly that one link in the brake chain was longer than the others. This was competent evidence tending to sustain the plaintiff's contention as to the condition of the brake chain and was admissible. The motion to strike out was properly overruled.

Where evidence is offered, a portion of which is admissible and the other not, and the objection to it is general, the motion to strike out must be overruled. *Washington, &c. Ry. Co.* v. *Lacey,* 94 Va. 460-463, 26 S. E. 834.

Other errors are assigned but it will be unnecessary to notice them in detail, as they are not likely to arise upon the next trial, or are controlled by what has been said in disposing of the errors particularly considered.

The judgment complained of must be reversed, the verdict set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*