# Richmond

## BOWLES' ADMINISTRATOR V. VIRGINIA SOAPSTONE COMPANY.

### January 15, 1914.

1. EVIDENCE—*Precautions After Accident—Inspection of Mines.*—It is not permissible for the purpose of showing a negligent injury to show that a mine was inspected more frequently after the accident complained of than before. Evidence of subsequent repairs or precautions taken after the happening of the accident causing the injury is not admissible to prove antecedent negligence.

2. EVIDENCE—*Relevancy—Death by Wrongful Neglect.*—In an action for death by negligence, a conversation between witnesses and deceased to the effect that he was well pleased with his position and regarded it as the best job he ever had is wholly immaterial to the issue.

3. EVIDENCE—*Experts—Data for Opinion.*—An expert cannot be asked whether he would regard it as safe to rely on pins to hold in position a mass of stone from fifty to sixty feet long and from twenty to thirty feet wide. The weight and dimensions of the stone which in fact fell could not have been known until after it fell, and could not have been made the subject of a hypothetical question to a witness however expert he may have been.

4. MASTER AND SERVANT—*Safe Place—General Practice of Others—Individual Practice.*—In determining the question whether or not the master has exercised ordinary care in providing a reasonably safe place for the servant to work, the general practice of employers in similar lines of employment is admissible in evidence, but the act of a particular corporation or individual cannot be introduced to show that the master has or has not exercised that degree of care which the law requires in such case.

5. MASTER AND SERVANT—*Mines—Method of Work—Knowledge of Servant—Common Knowledge.*—In an action to recover for the negligent death of a miner killed by' stone and earth caving in on him while at work in the mines, it was not to the prejudice of the plaintiff that the defendant was permitted to show that the method adopted by the defendant of pinning up the cracks in the

walls, and of inspecting the walls, was a matter of general knowledge among all of the employees of the defendant engaged at that place, and was generally and commonly known.

6. MASTER AND SERVANT—*Safe Place—General Custom—Stone Quarry —Case at Bar.*—The evidence in the case at bar shows that the use of iron pins put into the walls or sides of a stone quarry along the lower edge of a seam discovered in said walls, as a means of supporting the walls and preventing the fall of stone, was sanctioned by general custom as a sufficient precaution against the fall of stone under the conditions existing at the time of the accident under investigation, and, together with other precautions taken to keep the mine in a reasonably safe condition, further shows that the defendant discharged the duty imposed upon it to use reasonable care to furnish and keep a place reasonably safe for the performance of the duties committed to its employees.

7. MINES AND MINERALS—*Seam—Crack.*—A seam, in mining, is a thin layer or stratum, a narrow vein between two thicker strata. It differs from a crack because there is no actual parting of the substance in which the seam appears, though a seam may develop into a crack.

8. MASTER AND SERVANT—*Safe Place—Mines—Quarries.*—An employer is not an insurer of the safety of the employee. His duty is performed if he exercises reasonable care to provide a reasonably safe place in which the employee is to do his work, and exercises reasonable care and supervision to see that a reasonable condition of safety is preserved. These principles apply with peculiar force to mines and quarries, for in them conditions are never at rest. Everything is in a condition of change, so that both the employer and the employee must be upon the alert to guard against danger.

9. EVIDENCE—*Experts—Reasons for Opinions.*—Expert testimony is a useful and necessary adjunct to the administration of justice, and a capable expert can often throw light upon dark places; but the force of expert testimony must, after all, in large measure, depend upon the reasons that the witness is able to give for the opinions which he expresses.

10. MINES AND MINERALS—*Cracks in Walls—Inspection—Sounding.*— Inspection by sounding to ascertain the extent and danger attending the presence of a crack in a stone quarry seems to be the usual and customary method observed in such case. While not infallible, yet, in the endeavor to ascertain conditions that are inaccessible to sight or touch, the sound that is given back by a blow upon the surface of the rock is the safest means of

ascertaining whether it is a solid mass or is interrupted by a seam or crack.

11.  MINES AND MINERALS—*Quarries—Cracks—Securing by Pins—Customary Method.*—Pins such as were used in the case at bar are in general use where a seam is disclosed in the walls of a quarry and are relied upon by those engaged in quarrying—not that they afford an absolute assurance of safety, but that in dealing with unknown conditions experience has shown that they are usually an efficient aid in promoting safety.

12.  MINES AND MINERALS—*Quarries—Cracks—Test of Core Drills.*—A core drill is a hollow cylinder armed with black diamonds which is made to revolve with great rapidity, with the result that when driven into a stone surface a core is found in the midst of the cylinder, and the theory is that by taking out a core it will show the constitution of the mass from which it is taken and whether seams or cracks exist in it. But fractures in the core are often produced by the operation of the drill itself, and hence it is not an infallible test of the condition of the mass.

Error to a judgment of the Circuit Court of Nelson county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Caskie & Caskie,* for the plaintiff in error.

*P. H. C. Cabell* and *Coleman, Easley & Coleman,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Nathaniel Bowles came to his death by a fall of stone in the Virginia Soapstone quarry, his administrator brought suit to recover damages, and the jury rendered a verdict in his favor for $6,000, subject to the judgment of the court upon the defendant's demurrer to the evidence. The court rendered judgment for the defendant, and the case is now before us upon a writ of error.

The declaration contains two counts, the first of which states that the defendant was in the possession and operation of a quarry, which it had sunk to a depth of two hundred feet below the surface, and had negligently and unskillfully left the sides or walls of the quarry, which are composed of rock, soapstone or earth, so steep and precipitous that any stone or earth in the sides or walls which might become loosened, as was liable and likely to happen at any time by the jar and vibration caused by the work in the quarry, and the result of the usual and common processes of nature, would necessarily fall upon the bottom or floor of the quarry, and upon any person or persons who might be in the quarry, and although the defendant had been in possession of and operating the said quarry for ten years, it had nevertheless negligently and carelessly permitted the sides or walls of the said quarry to remain in the dangerous and perilous condition aforesaid.

The second count charges that it was the duty of the defendant to keep and maintain the walls and sides of its quarry, which were of great height and very abrupt, clear of loose rock, or of such rock, stones and debris as were liable to fall down and injure or kill its servants while at work in the said quarry; "and said plaintiff says that the said defendant disregarded its duty in this behalf, and carelessly, wilfully and negligently failed to keep its said quarry in a reasonably safe condition, and left rocks or stones in the walls or sides of said quarry, loose and in such condition that they were liable to fall from their positions on the servants of the defendant below, while they were at work in the said quarry for the said defendant for hire, and that said defendant carelessly left a certain mass or body of stone or earth in such condition in the walls or sides of its said quarry that it was liable at any time to fall out of its place and down upon the servants of the said defendant, while they were at work in the said quarry, and

to injure and kill them, of all of which the defendant company had notice and especially had notice of the dangerous condition of the mass of rock or earth aforesaid, whilst the dangerous condition of said quarry and the danger from the mass or body of rock aforesaid was unknown to the plaintiff's intestate."

Each count then charges that by reason of the negligence alleged a mass of rock fell, struck the plaintiff's intestate and inflicted upon him injuries from which he died.

During the progress of the trial numerous objections were taken to rulings of the court in the admission of testimony, which are assigned as error.

The first bill of exceptions is to the action of the court in refusing to allow a witness on behalf of the plaintiff to testify that the inspection of the walls of the quarry was much more frequent after Bowles was killed than before.

The question here presented is in principle similar to that decided by this court in *Va. & N. C. Wheel Co.* v. *Chalkley,* 98 Va. 62, 34 S. E. 976, where it was held in an action by a servant to recover damages for an injury, that 'evidence of repairs to machinery after the injury is not admissible to show negligent failure to repair before the injury. A number of cases are there cited, among them *Morse* v. *Min. & St. L. Ry.,* 30 Minn. 465, 468, 16 N. W. 358; *Columbia R. Co.* v. *Hawthorne,* 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405, and numerous others, to which may be added the law as stated by Thompson in his Commentaries on the Law of Negligence, section 7871, where it is said: "It is now settled by the weight of authority as well as reason that evidence of subsequent repairs or precautions taken after the happening of the accident causing the injury is not admissible to prove antecedent negligence."

The assignment of error based upon the second bill of exceptions is to the exclusion of a conversation had between witnesses and the deceased in which he had ex-

pressed himself as well satisfied with his position and regarded it as the best job he had ever had.

We cannot conceive that this evidence could have had the slightest probative value in behalf of the plaintiff and its admission or rejection were wholly immaterial to the issue before the jury.

Bill of exceptions No. 3 is to the refusal of the court to allow a witness to testify that after the accident the company put other pins in the walls, and that the foot wall of the quarry had after the accident caved in for the distance of from thirty to fifty feet, as a result of which the quarry had to be abandoned. This ruling is covered by what we have already said with reference to the first bill of exceptions.

Bill of exceptions No. 4 is to the action of the court in refusing to allow a witness to testify as to whether he would regard it as safe to rely on pins to hold in position a mass of stone from fifty to sixty feet long and from twenty to thirty feet wide. This question submitted to an expert for his opinion a condition of facts which could not be known until after the occurrence of the accident. The event is always a great teacher. The Nevada, 106 U. S. 154, 1 Sup. Ct. 234, 27 L. Ed. 149. The mass of stone which actually fell weighed many hundreds of tons, in the opinion of some of the witnesses who testified, but its weight and dimensions were not known until the mass actually fell and could not be made the subject of a hypothetical question to a witness, however expert he may have been.

Embodied in the same bill of exceptions No. 4 is an objection to the ruling of the court excluding the testimony of a witness to the effect that when he went to the Piedmont quarry he found one of the walls pinned up; that he worked there for two or three months when it was discovered that a mass of stone forming a part of the foot-wall was giving way, whereupon he took the men and machines out of the quarry and proceeded to blast down the wall.

This action of the court was clearly in accordance with the law in such cases.

In *Bertha Zinc Co.* v. *Martin,* 93 Va. 871, 22 S. E. 869, 70 L. R. A. 999, it was held that "it is the duty of a master to exercise ordinary care, that is, such care as reasonable and prudent men use under like circumstances, in providing safe and suitable appliances and instrumentalities for the work to be done, and in providing generally for the safety of the servant in the course of his employment, regard being had to the work and the difficulties and dangers attending it. He is not bound to provide the latest inventions, nor the most newly-discovered appliances. The master is not required to use more than ordinary care no matter how hazardous the business may be in which the servant is engaged. Ordinary care depends on the circumstances of the particular case, and is such care as a person of ordinary prudence, under all the circumstances, would exercise. This is to be ascertained by the general usages of the business. The master is not held to any higher degree of skill than the fair average of his profession or trade. He is not an insurer of the safety of his servants and is liable for the consequences, not of danger, but of negligence."

In section 7776, Thompson on Negligence, it is said that "On the question whether the employer has exercised reasonable and ordinary care in providing and maintaining safe appliances and places for work, the plaintiff may show the general practice of other employers in similar lines of employment in these respects."

In the case before us the effort was not to show a general practice of other employers, but a specific act of an individual engaged in quarrying stone under conditions wholly different from those which are here presented.

The fourth objection embraced in the fourth bill of exceptions is because the court allowed A. H. Lloyd to tes-

tify as to the general custom in soapstone quarries through-out the United States in reference to the prevention of the falling or sliding of walls.  This ruling of the court was clearly within the law as stated in the case of *Bertha Zinc Co.* v. *Martin, supra;* and taken as a whole the ruling of the court upon this bill of exceptions properly illustrated the rule and its exception—that the general practice of em-ployers in similar lines of 'employment is admissible, while the act of a particular corporation or individual cannot be introduced to show that the master has or has not exercised that degree of care which the law requires in furnishing a reasonably safe place for the performance of the duties as-signed to his employees.

The fifth bill of exceptions is to the action of the court in permitting witnesses to testify that the method adopted by the defendant of pinning up the cracks in the walls, and of inspecting the walls was a matter of general knowledge among all of the employees of the company engaged at that place, and was generally and commonly known.  The objection to this evidence is that "it could only tend to confuse."  In what way it tended to confuse is not pointed out, nor is it apparent to the court.  Whether or not the pinning up of the cracks and inspecting of the walls was a compliance with the duty imposed upon the defendant of furnishing a reasonably safe place for the doing of the work assigned to its employees, is the question at issue. That the methods employed were matters of common knowl-edge could not be injurious to the plaintiff, and must, in-deed, have been somewhat to his advantage, as affording the greatest scope for investigation into their efficiency. We do not perceive that there was any error in this ruling to the prejudice of the plaintiff.

The seventh bill of exceptions is to the action of the court in striking out certain evidence.  This evidence, as stated in the petition, pertained to the method of quarrying,

the use of pins, as to what cracks indicated and the course to be pursued where the cracks or seams were discovered, the use of dynamite in blasting in the quarry, and the use of a diamond core drill in ascertaining the extent and danger resulting from cracks.

Referring to the declaration in this case, it appears that the negligence charged in the first count is "that the quarry had been driven to a depth of about 200 feet, and that the sides or walls thereof, which were composed of rock, soapstone or earth, were so steep and precipitous that any stone or earth in the sides or walls which might become loosened, as was liable and likely to happen at any time by the jar and vibration caused by the work in said quarry, and the result of the usual and common processes of nature, would necessarily fall upon the bottom or floor of the quarry and upon any person or persons who might be in said quarry." It is obvious that the wrong here complained of is that the sides or walls of the quarry were left too steep or precipitous, so that stone which became loosened, as was liable and likely to happen by the jar and vibration of the work in the quarry, and the result of the usual and common processes of nature, would fall. There is not a suggestion of a want of care or skill in the conduct of the work of the quarry other than the form in which the walls were left, as being too steep and precipitous. The inference plainly is that, although the work was conducted in the usual and proper manner, the unskilful method by which the quarry had been excavated, as a result of which the walls had been left as described in the declaration, controlled and dominated the situation, so that from this initial fault the whole sequence of events followed which culminated in the fall of rock and the injuries to plaintiff's intestate. Quarrying cannot be carried on without jar and vibration, however skilfully done, nor can the result of the usual and common processes of nature always be obviated by any degree of care.

The second count in the declaration is that the defendant wilfully and negligently failed to keep its quarry in a reasonably safe condition, and left rocks or stones in the walls or sides of the quarry, loose and in such condition that they were liable to fall on the servants of the defendant below.

The condition of the record is such that we cannot deal satisfactorily with the many objections stated in bill of exceptions No. 7, except in a general way. Some of the objections can be disposed of by what we have already said with respect to the two counts of the declaration, which make no charge as to the method of quarrying save that already specifically mentioned, but admitting that under its general terms the plaintiff could have challenged the use of pins as a sufficient precaution under conditions which were present at the time of the accident, we are of opinion that the evidence shows that their use was sanctioned by general custom, and in connection with frequent inspections which were made by sounding the face of the quarry with large hammers or crowbars and by a careful examination by the eye of all superficial appearances, that the defendant discharged the duty imposed upon it to use reasonable care to furnish and keep a place reasonably safe for the performance of the duties committed to its employees. *Cranes Nest C. & C. Co..* v. *Mace,* 105 Va. 624, 54 S. E. 479.

The quarrying of stone, and it seems especially of soapstone, is a hazardous business. The elements of danger cannot be wholly eliminated by the utmost care. A quarry cannot be conducted without blasting and the use of machinery which causes vibration. In the case under consideration, after they had gone down some distance into the earth, perhaps sixty feet, a seam was discovered, running in a general way parrallel to the floor of the quarry. A *seam* is defined to be, in mining, "a thin layer or stratum, a

narrow vein, between two thicker strata." It differs from
a crack because there is no actual parting of the substance
in which the seam appears, though a seam may develop into
a crack. The evidence shows that the seam in question
was so narrow as only to admit of the entrance of a thin
knife blade. Soon after it was discovered a little sand, or
gravel, or clay, fell from this seam, with the result that
those in charge put iron pins along the lower edge of the
seam. These pins were from an inch and a half to two and
a half or three inches in diameter, and some of them as
much as seven feet in length. The quarrying continued
and was carried down to a considerable distance, when
three or four years after the discovery of the first seam
another seam, running in a general way parallel to the first
and of the same character, was discovered. Pins were in-
troduced along the lower edge of this seam. During all
the time frequent and careful inspections were made of the
face of the wall, and it was sounded with heavy hammers
and crowbars. There is no evidence of the slightest charac-
ter of any movement of the stone or anything to indicate
that any movement was to be apprehended, save and except
what we have stated,—the appearance of the first seam, the
falling of a little material from it, and after the lapse of
three or four years the discovery of a similar seam sixty·
feet below the first one, with no evidence of any connection
between the two seams. After the discovery of the second
seam and the introduction of the pins, the quarrying con-
tinued for something like a year, and still there was noth-
ing to indicate danger, when suddenly, without warning, a
great mass of stone fell and inflicted injuries from which
plaintiff's intestate died.

It must always be borne in mind that the employer is not
the insurer of the safety of the employee. His duty is per-
formed if he exercises reasonable care to provide a reason-
ably safe place in which the employee is to do the work,

and exercises reasonable care and supervision to see that a reasonable condition of safety is preserved. These principles apply with peculiar force to mines and quarries, for in them conditions are never at rest; everything is in a condition of change; so that both the employer and the employee must be upon the alert to guard against danger.

The contention of plaintiff in error could not be satisfied short of making the employer the insurer of his servant's safety. He earnestly insists that the use of pins, of sounding and of inspection were insufficient. The only method he suggests as better than that adopted is the use of the diamond core drill to ascertain the extent and danger of cracks.

Expert testimony is a useful and necessary adjunct to the administration of justice, and a capable expert can often throw much light upon dark places; but the force of expert testimony must, after all, in large measure depend upon the reasons that the witness is able to give for the opinions which he expresses. Some of the expert witnesses of plaintiff in error testify that inspection by sounding is the only mode by which can be ascertained the extent and danger attending the presence of a crack in a stone quarry, and that seems to be the usual and customary method observed in such cases—not that it is infallible, not that it always produces satisfactory results and leads to accurate conclusions; but that, in the endeavor to ascertain conditions that are inaccessible to sight or touch, the sound that is given back by a blow upon the surface of the rock is the safest means of ascertaining whether it is a solid mass or is interrupted by a seam or crack. As to the use of pins, the evidence is that they are in general use and are relied upon by those engaged in the business of quarrying—not that they afford an absolute assurance of safety, but that in dealing with unknown conditions experience has shown that they are usually an efficient aid in promoting safety.

It is objected to their use that unless they pass through that portion of the rock which is in danger of falling into the solid mass beyond, they furnish no support, and this is true. How then can it be determined whether the pin has or has not passed through that portion of the rock which is prone to fall and into the solid mass beyond? The plaintiff in error insists that this can be accomplished by the core drill. The core drill is a hollow cylinder armed with black diamonds (Webster's Dict.), which is made to revolve with great rapidity, with the result that when driven into a stone surface a core is found in the midst of the cylinder, and the theory is that by taking out a core it will show the constitution of the mass from which it is taken, and whether seams or cracks exist in it. Theoretically this may be true, but when it is suggested that by force of the revolution of the cylinder the core is often broken, though no crack or seam be present in the stone, and that the edges of the core will be so worn and abraded by the rapid revolution of the drill as to render it impossible to distinguish between a fracture existing in the rock where the core drill was applied and fractures in the core produced by the operation of the drill, the result is so natural, so conformable to reason, that the statement of it carries conviction with it; so that the core drill becomes equally as fallible as the sounding hammer in disclosing the secrets that lie hid in a mass of stone.

It would seem, therefore, that there is no method by which safety can be insured short of an abandonment of the quarry. That conditions may become so dangerous in a quarry that nothing short of abandonment of the enterprise will satisfy the requirements of the law, may be conceded; but we are of opinion that this record discloses no such condition. A seam was discovered in the face of this rock so slight that only the end of a thin knife blade could be inserted in it. After four years no movement of the

rock was discovered, though constant, careful inspection of the whole environment was made. Sixty feet lower down, and after the lapse of three or four years, another seam was discovered of like character. Measures were taken such as are in use to safeguard the situation thus disclosed, and months afterwards, without warning of any kind the disaster occurs.

We have not enlarged, by way of citing authorities, upon the general duty of a master, but have contented ourselves with a statement of the general principles which are illustrated by almost innumerable cases in our reports, and we shall conclude with a general reference to only a few of them. *Bertha Zinc Co.* v. *Martin, supra; Norfolk, &c., Traction Co.* v. *Ellington,* 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117; *Southern Ry. Co.* v. *Mauzy,* 98 Va. 692, 37 S. E. 285; *Potomac, &c., R. Co.* v. *Chichester,* 111 Va. 152, 68 S. E. 404; *Southern Ry. Co.* v. *Foster,* 111 Va. 763, 69 S. E. 972; *Southern Ry. Co.* v. *Lewis,* 110 Va. 851, 67 S. E. 357; *Persinger* v. *Alleghany Ore & Iron Co.,* 102 Va. 354, 46 S. E. 325; *Clinchfield Coal Co.* v. *Wheeler,* 108 Va. 448, 62 S. E. 269.

Upon the whole case we are of opinion that the judgment should be affirmed.

*Affirmed.*