## Richmond.

### PARRISH AND COMPANY V. PULLEY.

November 20, 1919.

1. DEMURRER TO THE EVIDENCE—*Inferences Most Favorable to De-murree Adopted.*—Where several inferences may be drawn from the evidence, differing in degree of probability, on a demurrer to the evidence, the court must adopt those most favorable to the demurree, unless they are strained, forced, or contrary to reason.

2. MASTER AND SERVANT—*Action against Master for Personal In-juries—Falling Derrick—Case at Bar.*—In the instant case the accident was occasioned by the falling of a derrick caused by the slipping of a guy rope. The rope was attached to a crow-bar driven into the ground with the small end upwards; the rope was a new one, and the crab was too heavy for so light a derrick. The bar was driven into the ground and a rope attached to it by the foreman and a fellow servant of plaintiff and one of the defendants who was a member of the defendant firm. The foreman testified that he knew that the vibration would cause the rope to slip, and also knew that if he had taken a turn and two half hitches the vibration probably would not have caused the rope to slip. The fellow servant who assisted in attaching the rope to the crowbar testified that he didn't think that it was going to stand.

   *Held:* That a jury might have reasonably inferred from the knowledge of the foreman and the statement of the fellow servant the manner in which the crowbar was driven into the ground, and the other evidence for the plaintiff that the defendants were negligent in not securing the guy rope in such manner that it would not slip.

3. MASTER AND SERVANT—*Action against Master for Personal In-juries—Falling Derrick—Case at Bar.*—While in the instant case defendants were under no obligation to foresee and provide against that which reasonable and prudent men could not expect to happen, the jury would have been well warranted in finding the defendants negligent because the foreman did not take "a turn" that would have avoided the injury, when he knew that such a "turn" would have made the derrick secure although the small end of the crowbar was up.

4. FELLOW SERVANTS—*Vice Principal and Fellow Servant.*—A servant may in the performance of one act be a fellow servant and in the performance of another be a vice principal.

5. FELLOW SERVANTS—*Non-Assignable Duties—Case at Bar.*—In the instant case it appeared that it was the duty of the defendants, not only to furnish the derrick, but also to erect it and move it when necessary, and that the plaintiff was not required to furnish anything but his trowel and hammer. This duty was therefore the master's duty, and was not assignable, and if there was negligence in the discharge of it, the negligence was that of the master.

6. FELLOW SERVANTS—*Master as Fellow Servant.*—While a representative of the master may become a fellow servant if engaged in a mere operative act, the master never can.

7. MASTER AND SERVANT—*Assumption of Risk—Negligence on the Part of the Master—Concurrent Negligence of Master and Fellow Servant.*—The servant never under any circumstances impliedly assumes any risk of negligence on the part of the master, and if his personal negligence proximately contributes to the injury of the servant, he is liable as though he only were at fault. The same is true where the injury is the result of the concurrent negligence of the master and a fellow servant.

8. MASTER AND SERVANT—*Partnership—Liability of Partners for Negligence of Member of Partnership.*—If the master is a partnership, then all the partners are liable for the negligence of a member of the partnership, as the negligence of one is the negligence of all.

9. MASTER AND SERVANT—*Contributory Negligence—Falling Derrick—Case at Bar.*—In the instant case an action for personal injuries caused by the falling of a derrick due to the slipping of a guy rope from a crowbar to which it was attached, the slipping of the rope was not an ordinary risk incident to the business in which plaintiff was engaged, nor was the danger from insecurely fastening the guy rope, under the circumstances, an open and obvious one, it not being shown that the plaintiff knew that the crowbar was driven into the ground with the small end up, or that he knew how the knots were tied.

10. DEMURRER TO THE EVIDENCE—*Inferences against Demurree.*—Only those inferences are drawn against the demurree which necessarily flow from the evidence.

11. MASTER AND SERVANT—*Contributory Negligence—Falling Derrick—Case at Bar.*—In the instant case there was nothing in the evidence to justify the conclusion that plaintiff was guilty of negligence proximately contributing to his injury. Although it was true that plaintiff pinched the derrick in order to adjust

it to the work to be done, it was put there to be pinched and it was plaintiff's duty to pinch it. In no other way could the derrick be utilized. The record however, failed to disclose any negligence on the part of the plaintiff in the manner in which he pinched it.

12. MASTER AND SERVANT—*Safe Appliances.*—A servant has the right to assume that a tool or appliance furnished him by the master is a reasonably safe tool or appliance with which to do the work assigned to him.

Error to a judgment of the Corporation Court of City of Charlottesville, in an action of trespass on the case. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Caskie & Caskie,* for the plaintiff in error.

*Dunn & Walker,* for the defendants in error.

BURKS, J., delivered the opinion of the court.

This is an action to recover damages for a personal injury. After all the evidence had been introduced the defendants demurred to the evidence, but the trial court overruled the demurrer and entered judgment for the plaintiff for the damages assessed by the jury, to which judgment this writ of error was awarded.

E. H. Parrish & Company (who will be hereinafter referred to as the defendants) were engaged in the construction of a brick building in the town of Covington. D. Landes was employed as foreman and put in charge of the erection of the building. L. O. Pulley (hereinafter called the plaintiff) was employed to set the stone in the walls. In order to do this it was necessary to use a derrick. The derrick generally used for this purpose was,

41

what is known as an "A." or "Breast Derrick," and was of simple construction. It consisted of two pieces of timber joined at the top like the letter A with a crab or windlass fastened across the timbers at a convenient distance from the foot thereof to be operated. Such a derrick had been constructed by the defendants and had been used for placing stone on the rear of the building. After Pulley had been at work for four or five days setting small stone, it became necessary to have a derrick to raise the larger stone which had to be set in the wall. Thereupon Pulley, Landes and other servants of the defendants went to the rear of the building and brought the derrick to the front of the building and set it on a platform at a convenient place to be used for raising the larger stone. The derrick was erected by placing the foot thereof upon a platform just inside of the front wall of the building with the top leaning over the front wall, and was secured by a guy rope running over the top of the derrick to a beam or girder inside the building to which it was fastened, and by a guy rope running over the top of the derrick out to a point in the street in front of the building where the same was attached to a crowbar which had been driven in the street for that purpose. Both guy ropes were fastened to the top of the derrick by Pulley himself, who also fastened the rear rope to the girder on the inside of the building. The bar used to secure the front guy rope was driven into the street by Landes, who was superintendent of the work, and by Craig, another servant of the defendants, who was Pulley's helper. The guy rope was then fastened to the crowbar by what is called two half hitches. The crowbar, which was four or five feet long, was driven in the ground at an angle of about 60° which is the customary and usual way of doing it; about one-half of it being in the ground and

the other half above the ground, and the rope was tied as near to the ground as it could be tied. The driving of the bar and the fastening of the rope was done by Landes and Craig, servants of the defendants, assisted by J. E. Singleton, who was a member of the firm of E. H. Parrish & Company.

The derrick, when in place, had a working radius of about five feet, and after being placed it was necessary to adjust it so as to raise the stone to the position in which it was to be placed in the wall. In order to adjust it, it was necesary to pinch the derrick with a crowbar. This pinching process would cause a vibration of the front guy rope, and if sufficiently violent might cause the rope to come off unless it was securely fastened. Pulley, how-ever, had had twenty years experience in laying stone and handling derricks of this kind, and was an entirely com-petent man to pinch the derrick. After the derrick had been put in place as above mentioned, Pulley began to pinch it in order to adjust it for raising the stone which he wished to place in the wall. While thus pinching it, and before a single stone had been placed in the wall, the derrick fell backwards and struck Pulley, knocking him to the ground, a distance of about sixteen feet, breaking his arm, dislocating his shoulder, and causing other in-juries for which this action was brought. After the ac-cident, it was found that the front guy rope had slipped off the crowbar, but the knots in the rope had not come untied, the bar had not broken, and its position in the ground had not been changed or loosened. An examina-tion showed that the bar which was used was one-eighth of an inch smaller at the top than at the bottom, which was driven into the ground. The larger end was driven into the ground because that end was sharpened. When raising stone to the wall the strain was entirely on the

rear guy rope; the front guy rope was intended mainly to hold the derrick in place when no stone was being lifted. The rope used for the front guy was a new hemp rope and was not as flexible as a rope of more pliable material. The usual way of fastening such rope, the object of which was to hold the derrick in place, was by what is called two half hitches, which are knots so tied as that the greater the strain put upon them the tighter they become. The knots were so tied in this case. Landes testified that he knew that the vibration would cause the rope to slip, but that when he tied the rope he did not know it would slip, and if he had he would have put another turn to it as he knew if he had taken the turn and two half hitches the vibration probably would not cause the rope to crawl over the top of the bar. The building fronted on a street of the town and there was no substantial object to which the front guy rope could be attached, and several witnesses testified that under such conditions the usual way for attaching a front guy rope was to drive a crowbar in the ground, as was done in this case, though an expert, examined on behalf of the plaintiff, testified that he had never known a crowbar to be thus used, and that the front guy rope was always attached to some substantial object like a tree or telegraph pole, and if there was not rope enough to reach such an object the proper method was to get more rope. No witness, however, testifies that it was customary to drive a crowbar in the ground with the small end at the top.

It is conceded by counsel on both sides that when the derrick was plumb, it could not and would not fall, even if there was no front guy rope attached, and that if it was out of plumb, it could not fall if the front guy rope was in place was of adequate strength, and securely fastened. The derrick could never have fallen back-

wards, whether out of plumb or not, if properly anchored in front. This fixes the slipping off of the front guy rope as the proximate cause of the injury.

It remains to enquire whether the defendants were negligent in the manner in which the front guy rope was secured, and if so, was the plaintiff negligent in the manner in which he operated the derrick. It is conceded that it was the duty of the defendants to furnish the plaintiff with a proper derrick. The derrick was composed of two pieces of timber two by four inches, twelve feet long, joined at the top, and there was attached to it a crab weighing approximately four hundred pounds. When the erection was completed, the derrick was left plumb. But it was never intended to remain stationary. It was erected for use, and could only be used by being pinched into proper position. This fact was well known to the defendants. Pulley also "was a competent man to pinch the derrick; he had done it many, many times," and the evidence fails to disclose any negligence on his part in the method in which he pinched it. He helped to erect the derrick and knew about the size of the timbers and the weight of the crab, but he did not know that the crowbar was inserted with the small end upwards, that the front guy rope was not flexible, or the manner in which it was fastened. He had the right to assume that the master had done his duty in this respect.

It is earnestly insisted by counsel for the defendants that the master is liable for the consequences of negligence, but not of danger, and that he is not liable for the results, if he has followed the ordinary usuage of the particular business. Citing *Bertha Zinc Co.* v. *Martin,* 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999, and *Bowles* v. *Va. Soapstone Co.,* 115 Va. 690, 80 S. E. 799. This doctrine is not questioned by the plaintiff, but its application is

denied when applied to the facts proved and the inferences the jury had the right to draw therefrom in the case at bar. The facts relied on by counsel for the defendants to support their position are thus stated by them in the petition for the writ of error: "The platform, the derrick, the rope, the bar were used as were usually and customarily used, placed in the usual and customary way; that each was sufficient for the purpose for which it was intended was shown by the fact that none of them broke, or gave away in the slightest particular; the rope slipped off the bar, a thing which no one supposed would occur; a thing which, so far as we know, had never occurred before, and which no one did anticipate, and which could not reasonably have been anticipated. Surely petitioners cannot be said to have been negligent in not anticipating that such a result might follow."

[1] Where several inferences may be drawn from the evidence, differing in degree of probability, on a demurrer to the evidence, the court must adopt those most favorable to the demurree, unless they are strained, forced, or contrary to reason. *Wash. & O. D. Ry.* v. *Jackson*, 117 Va. 636, 85 S. E. 496.

[2] When the witnesses, in the case at bar, testified as to the usual and customary way of anchoring a front guy rope to an "A" derrick, it must be assumed that they testified to the method of anchoring under normal conditions as they were not asked as to abnormal conditions. Here the testimony for the plaintiff shows that the crowbar used was between four and five feet long and was one-eighth of an inch smaller at one end than at the other, and was set in the ground about one-half its length, with the small end upwards; that the rope used was a new one, and that an old rope is more flexible and the knots will get tighter than in a new one; that the crab was much too

heavy for that light derrick; that defendants had had trouble in balancing the derrick; that the excessively heavy crab used on the light derrick "would make it easier for the derrick to fall over frontwards or backwards as this one fell, and would put more strain on the guy ropes; that "when that front guy rope became unfastened or slipped off, the weight of the crab pulling at the inside of the derrick was what threw it over and on top of Mr. Pulley;" and that a crab of four hundred pounds usually requires timbers of three by six to build the frames. To this must be added the statement of Landes, the foreman in charge of the work, that he *knew* that the vibration would cause the rope to slip, and also *knew* that if he had taken a turn and two half hitches the vibration probably would not cause the rope to crawl off over the top of the bar, and the testimony of Craig, who was present when the two half hitches were tied and stated to Landes that he "didn't think that it was going to stand."

A jury might have reasonably inferred from the knowledge of Landes above mentioned, the statement of Craig, the manner in which the crowbar was driven in the ground, and the other evidence for the plaintiff hereinbefore detailed, that the defendants were negligent in not securing the front guy rope in such manner that it would not slip, and hence the trial court was bound to so find.

[3] Much was said in the argument about the inability of the defendants to foresee the happening of such an accident as caused the injury sued for, and many cases were cited to support the view that the defendants were under no obligations to foresee and provide against that which reasonable and prudent men could not expect to happen. But the argument loses its force and the cases cited their application in view of the testimony of Landes, defendants' foreman, who tied the rope and assisted in driving the

crowbar, that he *knew* that the vibration would cause the rope to slip and also *knew* "that if he had taken a turn and two half hitches that the vibration would not cause the rope to crawl off over the top of the bar." The jury would have been well warranted in finding the defendants negligent because Landes did not take "a turn" that would have avoided the injury, when he knew that such a "turn" would have made the derrick secure although the small end of the crowbar was up.

[4-8] The suggestion that Landes, in tying the rope to the crowbar, was a fellow-servant is not sound. A servant may, in the performance of one act be a fellow-servant, and in the performance of another be a vice-principal. *Norfolk & W. Ry. Co.* v. *Ampey*, 93 Va. 108, 25 S. E. 226, But it appears from the testimony of Landes, directly or inferentially, that it was the duty of the defendants not only to furnish the derrick, but also to erect it and to move it when necessary, and that the plaintiff was not required to furnish anything but his trowel and hammer. This duty was, therefore, the master's duty and was not assignable, and if there was negligence in the discharge of it, the negligence was that of the master. In addition to this, Singleton, one of the defendants, was present assisting in this work and the negligent manner in which the work was done was, in part, his negligence. While a representative of the master may become a fellow-servant if engaged in a mere operative act, the master never can. The servant never under any circumstances impliedly assumes any risk of negligence on the part of the master, and if his personal negligence proximately contributes to the injury of the servant, he is liable as though he only were at fault. The same is true where the injury is the result of the concurrent negligence of the master and a fellow-servant. If the master is a partnership, then all the partners are liable,

as the negligence of one is the negligence of all. *Crispin* v. *Babbitt*, 81 N. Y. 516, 37 Am. Rep. 521; *Lorentz* v. *Robinson*, 61 Md. 64; *Ashworth* v. *Stanwix*, 3 El. & El. 701; Huffcut on Agency, sec. 281; *Norton Coal Co.* v. *Murphy*, 108 Va. 528, 62 S. E. 268; *Ches. & O. Ry. Co.* v. *Newton*, 117 Va. 260, 85 S. E. 461.

[9, 10] Having ascertained that the slipping of the rope off the crowbar was the proximate cause of the injury, the jury could not have found that the plaintiff assumed that risk. Under the evidence, it was not an ordinary risk incident to the business in which he was engaged, nor was the danger from insecurely fastening the guy rope, under the circumstances detailed, an open and obvious one. It was not shown that the plaintiff knew that the crowbar was driven into the ground with the small end up, or that he knew how the knots were tied. It is true that he was on the building a short distance from where this work was done, but this is far from showing that he observed what was done, or, even if he had been observing, that he could, at that distance, have observed the difference in the sizes of the two ends of the crowbar, and inferences will not be made against a demurree to the evidence. Only those inferences are drawn against the demurree which necessarily flow from the evidence. *Johnson's Adm'r* v. *Ches. & O. Ry. Co.*, 91 Va. 171, 21 S. E. 238.

[11, 12] We are unable to find anything in the record to justify the conclusion that the plaintiff was guilty of negligence proximately contributing to his injury. It is true that the derrick was plumb when erected and would probably have remained so if it had not been touched, but no stone could ever have been hoisted unless the derrick was adjusted for that purpose, and the means of adjusting was by pinching. It is also true that the plaintiff pinched the derrick in order to adjust it to the work to be

42

done, but it was put there to be pinched, and it was the plaintiff's duty to pinch it. In no other way could the derrick be utilized. The record, however, fails to disclose any negligence on the part of the plaintiff in the manner in which he pinched it. On the contrary, the evidence for the plaintiff shows that owing to the excessive weight of the crab it was difficult to keep the derrick plumb, and the fair if not the necessary inference is that any movement of it, whether by pinching or otherwise, was likely to throw it out of plumb. While throwing the derrick out of plumb might have caused the rope to slip, the plaintiff had no reason to suppose that it would cause the derrick to fall. He knew nothing of the conditions existing at the other end of the front guy rope. He had the right to suppose that it was securely fastened, and if so he was in no danger even if the derrick was out of plumb. He was not concerned, therefore, to see that the derrick was kept plumb at all times. A servant has the right to assume that a tool or appliance furnished him by the master is a reasonably safe tool or appliance with which to do the work assigned to him. *Richmond Ry. Co.* v. *Williams,* 86 Va. 165, 167, 9 S. E. 990, 19 Am. St. Rep. 876.

We find no error in the judgment of the trial court and it will, therefore, be affirmed.

*Affirmed.*