## Richmond.

## SOUTHERN RAILWAY COMPANY v. H. S. CHADWICK.

### March 18, 1926.

1. MASTER AND SERVANT—*Railroads—Contributory Negligence—Negligence—Promulgation of Rules—Case at Bar.*—In the instant case, plaintiff, a man twenty-seven years old, had been in employment of the defendant railroad for twenty months  Plaintiff was injured while engaged in handling a push car in defendant's yards when his foot came in contact with a cross-tie which was raised at the middle two and three-fourths inches higher than the bottom of the rails. According to plaintiff's own testimony he knew that the track was not level between the rails and that in the position he occupied his foot was likely to be caught, resulting in injury.  Plaintiff was not engaged in the performance of any duties which required him to occupy a position on the front of the car, he was merely riding on the front of the car, with his feet hanging down between the rails, of his own volition.

   *Held:* That, under these circumstances, the railroad was not guilty of negligence in failing to provide a safe place for plaintiff to work, in failing to promulgate and enforce reasonable rules and regulations regulating the use of push cars, nor in failing to warn and instruct plaintiff of the risk and danger in and about the discharge of his duties when he had to use and ride on a push car; and that the injury sustained by the plaintiff was due solely to his own carelessness and negligence.

2. MASTER AND SERVANT—*Railroad—Rule Regulating Use of Push Car—Instructions as to Danger of Push Car.*—The very suggestion that a railroad company, at least under the facts of this case, could be negligent in not promulgating rules regulating the use of a push car, or that it should warn a man twenty-seven years of age, who had intelligence enough to be up and walking about, of the dangers of a push car  capable of a speed of three and one half miles an hour), when his duties required him to use it, brings its own refutation.

3. RAILROADS—*Safe Place to Work.—Raised Tie.*—The fact that a crosstie on a track in a railroad yard projected up in the center about two and three-fourths inches above the bottom of the rails, did not render the yard an unsafe place for plaintiff to work.  The roadbed was the usual roadbed found generally and used generally for the purpose for which the track was used and was in excellent condition.

4.  MASTER AND SERVANT—*Safe Place to Work—Safe Place Depen's upon Circumstances—Case at Bar.*—What is a reasonably safe place depends upon the circumstances of each particular case, and in the instant case the methods employed by the defendant in the const uction of the track upon which plaintiff was injured were the usual methods employed by railroads so far as the use of bent or curving ties were concerned, and such ties appeared hroughout the defendant's tracks, and in fact appear in every railroad track, and the track was in perfectly safe condition for the operation of trains for all pu poses for which i was intended.

5.  MASTER AND SERVANT—*Test of Negligence—Ordinary Usage.*—The unbending test of negligen e in methods, machinery and appliances is the ordinary usage of the business, and however strongly the jury may be convinced that there is a better or less dangerous way, no jury can be permi ted to say that he usual and ord nary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed. Juries must nece sarily determine the responsibili'y of individual conduct, but they cannot be allowed to set a standard which shall in effect dictate the customs or control the business of the community.

Error to a judgment of the Hustings, Court, Part 2, of the city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Thos. B. Gay* and *Wirt P. Marks, Jr.,* for the plaintiff in error.

*Allen & Weaver,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action for damages for personal injury wherein H. B. Chadwick, hereinafter referred to as plaintiff, recovered a verdict for $5,500 against the Southern Railway Company, hereinafter referred to as defendant, in the hustings court, part two, of

the city of Richmond, and upon which verdict the court rendered judgment.

The case is before this court for review upon a writ of error and supersedeas duly granted. There are a number of assignments of error, but in view of the fact that the evidence fails to show any negligence on the part of the defendant, it is not necessary to state or to discuss them separately. The trial court should have set the verdict aside as being without evidence to support it, and should have entered judgment for the defendant.

The material facts of the case are as follows: The plaintiff, a man of twenty-seven years of age, had been in the employ of the defendant, working with the bridge and building force, for twenty months. This force was a part of the "maintenance of way department," and its duties were to build and repair buildings, bridges and other structures, constituting part of the works of defendant. At the time of the injury complained of, September 25, 1923, and for two weeks prior thereto, this force was engaged in enlarging a transfer table at the defendant's repair shops in South Richmond, under a foreman, B. F. Carey. When the work had progressed to the point where crossties were needed, Carey sent the plaintiff with three other members of the crew, with a hand or push car, after the crossties. In order to reach the ties it was necessary to push this hand car over a track leading around the shops, known as the "belt line" track, and for this purpose it had to be first pushed eastwardly on the track leading from the shop yard to the east side of the transfer table pit, a distance of fifty or seventy-five yards, to a switch which connected this track with the belt line track. From thence it was pushed in a westerly direction about 200 yards to the place where

the ties were located. The men had two methods of pushing the car. Sometimes they would sit on either side of the car and would place their feet on the cross-ties outside of the rails and push the car along. Sometimes they would walk behind the car with their hands on the top, at the rear, and push the car as they walked along. Sometimes the car would be propelled by both methods. Reference is made in the record at a number of points to "kicking the car along," but this expression is used with reference to the first method mentioned—that is, sitting on the side of the car and pushing with the feet against the cross-ties.

The plaintiff and his coworkers, prior to the accident, had gotten one load of cross-ties, and on this first trip the plaintiff assisted in pushing the car to the point where the ties were located and also back to the pit. When the first lot of ties had been delivered at the pit and unloaded, the foreman directed that they return for another load. When the plaintiff and his companions started back with the car for the second load, the plaintiff went into the engine repair shop to get a drink of water. While he was getting the water, the other three men pushed the hand car eastwardly to the switch and then westwardly along the belt line track. When the plaintiff came out of the building, he walked directly across to the belt line track and stood in the middle of the track, with his back in the direction from which the push car was coming. As the front of the push car reached him, while he was standing in the position described and while the car was still in motion, he sat down on the front of the car with his feet hanging down between the rails. While the plaintiff was riding on the front of the car in that position, one of his feet came in contact with a tie in the roadbed, and as a result there-

of the front of the car was pushed against the back of his leg, thereby catching his foot and leg between the tie and the front of the car, and injuring his foot and ankle.   There was nothing on or near the belt line track to obstruct the plaintiff's view of the roadbed and ties during either the first trip which was made for the ties or on the second trip, during which the plaintiff was injured.

The push car was seventeen inches high, that is from the top of the rails to the top of the platform. The rails were five inches high and the tie which caught the plaintiff's foot was, at the middle, by actual measurement, two and three-quarter inches higher than the bottom of the rails.   This tie had a bend or bow in its center, and the tie was placed in the roadbed, as it was testified all such ties are always placed with the bend up, so that water would be drained off to the sides rather than to the center of the track. It was shown also, without contradiction, that hewn ties frequently are more or less bent, but that such ties are used in the construction of railroad beds and appear in every railroad, and are always placed as this tie was, with the high point in the center.   In fact it was shown that two other such ties were almost in the immediate vicinity of the tie which caught the plaintiff's foot.   The tie had been placed in the roadbed several years before, when the track was laid, and the track was shown to be in first class condition.

At the time of the accident two of the plaintiff's coworkers, namely, Moss and Buchanan, were walking behind the car, with their hands on the rear of its top or platform, and were thus pushing it along. Brookman, the other member of the crew of four men, was sitting on the left-hand side of the car at the front, pushing it with his feet against the ends of the

crossties, kicking it along, as heretofore described. Moss and Buchanan were walking along at an ordinary gait, and the car at the time of the accident was therefore moving between three and four miles an hour.

The plaintiff testified that he did not see the tie before his foot was injured, and that he did not know it was there. He also testified he did not let his legs hang straight down between the rails, but that he held them up "to keep from hitting anything that was elevated." According to his own testimony, he knew that the track was not level between the rails, and that in the position he occupied his foot would likely be caught, resulting in injury.

The plaintiff was not engaged in the performance of any duty which required him to occupy the position on the front of the car. He was merely riding on the front of the car, with his feet hanging down between the rails, of his own volition. There was nothing to interfere with the movement of the car on the track.

[1] There were three grounds of negligence alleged:

(1) Failure to provide plaintiff with a reasonably safe place within which to perform his work;

(2) Failure to promulgate and enforce reasonable rules and regulations, regulating the use of said push cars on the railway company's yards; and

(3) Failure to warn and instruct him, an inexperienced employee, of the risk and danger in and about the discharge of his duties whenever he had occasion to use and ride on said push cars while on duty.

[2] The trial court very properly refused to submit to the jury the question as to whether the defendant was negligent as alleged in the second and third grounds. The very suggestion that a railroad company, at least under the facts of this case, could be negligent in not promulgating rules regulating the use of a push

car, or that it should warn a man twenty-seven years of age, who had intelligence enough to be up and walking about, of the dangers of a push car (capable of a speed of three and one-half miles an hour), when his duties required him to use it, brings its own refutation.

[3] The case was fought out on instructions which submitted to the jury the question as to whether the defendant used reasonable care to provide the plaintiff a reasonably safe place to work, and the specific failure in this regard is charged to be that defendant permitted one of the crossties in the roadbed over which the plaintiff had to travel in the performance of his duties, to project up in the center about two and one-half to two and three-quarter inches above the bottom of the rails. We not only think that as a matter of law the defendant was not negligent, but that the injury sustained by the plaintiff was due solely to his own carelessness or negligence.

The plaintiff was working in a repair shop yard, and he was engaged with others in handling a push car, the speed of which was limited to the ordinary gait at which the laborers pushing it walked. This was not a yard where engines and cars are constantly shifting backward and forward, and where men are engaged in coupling and uncoupling, mounting and dismounting from moving trains, where prudence and caution at once suggest that no unnecessary obstacle should be allowed to appear or remain, upon which the man so engaged might trip and fall and so be injured or killed. The track in question was laid for the movement of engines and cars when occasion required, and for such use as the uncontradicted evidence shows it was in excellent condition and perfectly safe. W. H. Walden, who had been in the employ of the

defendant for thirty-three years and who had been roadmaster for thirteen years, in response to the question: "What was the condition of this track at the time of the accident?" replied: "It was in good condition for operating trains and cars; it was in first class condition for operating trains, cars and push cars." And again, with reference to the projecting tie, this witness testified:

"Q. How did it happen that there was a projection upward in this tie, as well as in the other ties you have mentioned?

"A. Well; you will find most of the hewed ties are not hewed straight, when the tree that the ties are cut out of is not. You will find a bow in right many of the ties used, and we always turn the bow up.

"Q. Why do you do that?

"A. Well; to prevent water standing in the tie. If you turned the bow down the water would stand in it, but turn the bow up and the water can drain off.

"Q. What would be the location of the bow in the tie with respect to the rails; would it be on the inside or outside of the track?

"A. Inside of the track.

"Q. As was the case with this particular tie?

"A. Yes, sir.

"Q. Is this tie the highest of its kind in the road along there, or are there several others just as high?

"A. We have them in the road most everywhere; scattered all along the line of the road.

"Q. Is it not a fact that in building railroads a great many crossties are thrown out upon inspection because of their being crooked like that?

"A. Not like that one, because if that were so that one would have been thrown out."

We have, therefore, in this case, the usual roadbed

found generally, and used generally, for the purposes for which this track was used, and we find it in excellent condition for such purposes. In addition, we find that the plaintiff was engaged in the simplest and least dangerous task that the mind can possibly conceive of, in connection with railroad work.

The plaintiff, as stated, was a man twenty-seven years old with nearly two years' experience in railroad work. Whatever his duties were, whether he was expected to push the car, either by kicking it along, or by walking behind it and pushing, or riding on the car while others pushed and kicked it along, no duty required that he should ride in the middle of the front of the car and dangle his feet down near the ties, nor could he expect his employer, the defendant, to keep the roadbed so smooth that he would be enabled to do so safely. Neither could he expect defendant to have the forethought to apprehend that unless this was done the defendant's feet would come in contact with a tie which projected a little higher in the middle than the other ties in the road, and that he would be injured thereby. The plaintiff, actually engaged in the act, could see this much better than the defendant could foresee it. That he did know he was engaged in a more or less dangerous pastime, is abundantly shown by the record. He testified himself that he did not let his legs hang straight down between the rails, and when asked why, he said he held them up to keep them from hitting anything that was elevated. It is certain, also, that at the rate of speed at which the push car was proceeding, that the plaintiff could easily have seen any unevenness in the track if he had been looking. The inevitable conclusion is that while he knew the road was not level, and while he was sensible that he was doing a thing that might result

in injury to himself, and while he could have seen any unevenness in the track ahead, if he had been looking, and could have avoided it by lifting his feet as he passed over it, yet in a moment of thoughtlessness he did not look and permitted his feet to swing too low, with the result that he was injured, and injured solely through his own negligence.

[4] So far as the alleged negligence of the defendant is concerned it must be remembered that it is charged with not using reasonable care to provide the plaintiff a reasonably safe place in which to work; that the alleged act of negligence relates to the method used in construction of the roadbed at the particular place where the accident occurred. It should be further remembered that what is a reasonably safe place depends upon the circumstances of each particular case, and that the methods employed by the defendant in the construction of the track upon which plaintiff was injured were the usual methods employed by railroads so far as the use of bent or curving ties were concerned, and that such ties appeared throughout the defendant's tracks, and, in fact appear in every railroad track, and that the track was in perfectly safe condition for the operation of trains for all purposes for which this track was intended.

In the case of *Nelson* v. *Southern Ry. Co.*, 170 N. C. 170, 86 S. E. 1036, Nelson, who was a civil engineer in the employ of the railroad company, was sent to Keysville, Virginia, to make surveys for a side track. After going over the track and marking the stations thereon, he walked back to check the stations. While walking along the track between the rails, he stepped upon a crosstie from which a piece 1½" x 6," V-shaped, slivered off under his weight. His foot slipped down between the ties into a space about five or six

inches deep from the top of the tie to the ballast, and he fell and dislocated his knee cap.  The Supreme Court of North Carolina said: "The principle of law upon which plaintiff rests his case is that defendant owed him a duty to provide him a reasonably safe place to do his work.  The plaintiff admits that he could have done his work by walking outside of the track on the ground as well as between the rails on the ties, and that the track was in perfectly safe condition for the operation of trains and for all purposes for which a railroad track is intended.

"From the circumstances in evidence we are unanimously of the opinion that the injury inflicted on the plaintiff was an accident, pure and simple, an unexpected and unforeseen result of a known cause, which ordinary foresight and precaution by defendant could not guard against.

"As was remarked in the consideration of this case, the injury was as much the result of an accident as the *Hammer Case (Martin* v. *Highland Park Mfg. Co.,* 128 N. C. 264, 38 S. E. 876, 83 Am. St. Rep. 671), or any other cases involving accidental injuries brought before us.  To hold otherwise would make the defendant an insurer against all possible injury, and the master is not an insurer of the servant's safety.  All that can be required of the master is that he shall use due and reasonable diligence in providing safe and sound machinery, in providing a safe place, and in the selection of fellow servants of competent skill and prudence, so as to make it reasonably probable that injury will not occur in the exercise of the employment.  Labatt's Master and Servant (2d. ed.), Vol. 3, p. 919; *Nail* v. *Brown,* 150 N. C. 535, 64 S. E. 434."

The judgment in this case was affirmed, upon appeal, by the United States Supreme Court (38 S. Ct. 233,

246 U. S. 253, 62 L. Ed. 699), the court stating, in doing so: "It is clear that the defendant did not fail in any duty which it owed to the plaintiff."

In *P. F. & P. R. Co.* v. *Chichester*, 111 Va. 152, 68 S. E. 404, this court held that the method of construction of a railroad track was ordinarily an engineering question, and after reviewing the decisions, including *Tuttle's Admr.* v. *Detroit, &c. Ry. Co.*, 122 U. S. 189, 7 S. Ct. 1166, 30 L. Ed. 1114, it was said: "We are of opinion, therefore, under the facts of this case, that the court erred in submitting to the jury the question whether or not the defendant company was negligent in the method it had adopted for constructing the switch upon which the injury occurred.

[5] "We are of opinion, also, that the court erred in submitting to the jury the question whether or not the defendant was negligent in the method of handling cars on the switch. That method was proved to be reasonably safe, and had been used for many years without personal injury to any one, and was in common use. 'Absolute safety,' as was said by the court in *Norfolk, etc. Co.* v. *Ellington's Admr., supra*, [61 S. E. 779, 108 Va. 245, 17 L. R. A. (N. S.) 117], 'is unattainable, and employers are not insurers. They are liable for the consequences not of danger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business * * The test of negligence in the employer is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they

cannot be allowed to get a standard which shall in effect dictate the customs or control the business of the community.' "

Many other cases might be cited repeating the principles heretofore enunciated, but it would unnecessarily prolong this opinion to do so.

In the instant case, it was shown that ties project above the bottom of the rails in all railroads. That the method of placing ties in the roadbed of railroads as the tie here complained of was placed, is usual and customary. Is a jury to be permitted to change this custom or method of construction? If it can say the tie in question was too high, it could as well say one extending half an inch above the bottom of the rails was negligent construction, or it could say that the space between the rails should be kept perfectly level and smooth.

This, the cases hold, juries cannot be permitted to do.

It would serve no good purpose to distinguish here the cases cited by the learned counsel for plaintiff, from the case at bar. None of them are applicable to a situation such as we have here. They are all cases in which, upon the question of primary negligence, reasonable men might differ. Here, no primary negligence on the part of the defendant is shown, nor has a state of facts been established by the evidence which justified submitting such a question to the jury. It follows that the judgment of the trial court is erroneous, and should be reversed, and that judgment should be entered here for the defendant.

*Reversed.*