# Richmond

## THE CHESAPEAKE AND OHIO RAILWAY COMPANY V. ANNIE L. BUTLER, ADM'X, ETC.

November 15, 1934.

Present, Campbell, C. J., and Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Leake & Spicer,* for the plaintiff in error.

*Homer Richey* and *Robert Whitehead,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in the trial court, in which Annie L. Butler, the administratrix of the estate of Preston J. Butler, obtained a judgment for $6,500 against the Chesapeake and Ohio Railway Company. It is conceded that the provisions of the Federal Employers' Liability Act (45 U. S. C. A. sections 51-59), as construed by the Federal courts, are applicable.

Butler was employed by defendant as section foreman on a branch line extending from Warren to Esmont. At the time of the accident, he was working on the main line between Warren and Howardsville. He had been in the employ of defendant for more than thirty-three years, but a part of each year, for ten or twelve years prior to the accident, he worked on the main line east and west of Warren. About 7:30 A. M., on October 22, 1931, Butler, operating a section car propelled by gasoline, with four of his section men, proceeded from Warren west, towards Howardsville, for the purpose of resuming work for the day, on the right of way, on that section of the main line. Within two miles of the starting point the motor car struck a steel bar, known as a brake-beam safety support, embedded in a tie and projecting two feet or more above the top of the rails. The car was derailed, and turned over, Butler thrown out of the car, one of his legs was broken, and his body severely bruised. As a result of these injuries he died within thirty days.

After the accident the safety-bar was found in an upright, or perpendicular position—one end had penetrated a cross-tie to the depth of six to eight inches, and had entered the tie from the west, two inches from the top of the tie and ten inches from the inside of the north rail. The lower edge of the cross-bar, or girder of the motor car, which came into collision with the safety-bar, was, while

the car was on the track, seven and three-fourth inches above the line of the top of the rails.

The brake-beam safety support is a part of the equipment used on freight cars to prevent brake-beams from falling on the rails and thereby causing derailment of trains. This particular bar, in its original condition, was a straight piece of steel thirty-eight and one-half inches long, two inches wide, and three-fourths of an inch thick, with two notches cut in the lower edge to prevent it from slipping forward or backward when in place. When installed on freight cars, they lie within, parallel to, and above, the line of the rails. They are below and at right angles to the brake-beams. Two safety-bars are fastened to the bottom of each car truck, and held in place by two metal clasps, or brackets, fitted over and fastened to the truck spring plank. After the bar is inserted through the open sides of the two brackets, straps are bolted across the openings.

Plaintiff contends that the safety-bar, with one end embedded in a cross-tie and the other projecting above and between the rails to a height of more than ten inches, was the result of a breach of duty which defendant owed decedent and was the proximate, or concurring cause of his death. The specific charges are that defendant failed to exercise ordinary care: (1) To provide a reasonably safe track and road-bed for Butler's use in working, and in going to and from his work; (2) to equip its freight cars with a safe and proper brake-beam support; and, (3) to make proper inspection and repairs of its freight cars.

There is no substantial conflict in the material evidence, and the main question presented is, whether plaintiff has proven a breach of duty defendant owed the decedent in any one, or more of the particulars enumerated.

In *Delaware, Lackawanna and Western R. Co.* v. *Koske*, 279 U. S. 7, 10, 49 S. Ct. 202, 203, 73 L. Ed. 578, this is said: "The Federal Employers' Liability Act permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or

insufficiency in plant or equipment that is not attributable to negligence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured, and that in whole or in part his injuries resulted proximately therefrom."

The only evidence which tends in the slightest degree to show the track or road-bed was unsafe was the fact that the safety-bar was sticking up between the rails just a few feet east of a road crossing. There was no direct proof of how it got there; Butler was a competent and experienced section foreman; a part of his contractual duties required him to be "on the lookout for a bad joint, or a misplaced rail plate" and to keep a constant watch for any obstruction or defect in the track at the point of the accident, which might endanger the movement of his section car, or the operation of trains. If any such obstruction or defect was discovered by him, it was his duty to remove or correct the same at once, and, if necessary, to halt the movement of trains until the same was done. Plaintiff, in her brief, states that "we have not charged defendant with negligence in the matter of track walking, or inspection." It follows that defendant was not negligent, in so far as decedent was concerned, in failure to discover the presence of the bar between the rails before the accident.

The second charge is that defendant breached its duty to decedent in installing and continuing to use this type of safety brake-beam support upon its freight cars. There was no proof showing whether this bar was attached to one of defendant's cars, or to a car owned by some other line. It was proved that falling brake-beams, due to strain in the application of brakes, constitute a serious cause of train derailments. Brake-beam safety supports, such as the one involved, were devised to eliminate this danger. The appliance is an emergency equipment and only becomes serviceable when the brake-beam falls. Assuming that the jury had the right to infer from the evidence that this particular safety-bar did in fact fall from one of defend-

ant's cars, the burden was on plaintiff to go further and prove that defendant breached a duty it owed decedent in equipping its cars with this type of safety-bar or that it was negligent in installing, or in failing to keep the same in good repair after it was installed.

This particular type of safety-bar was adopted by defendant in 1924, after adequate tests had been made, and its superiority to those in use had been determined by experts qualified to pass on the subject. Each bar used was made by responsible manufacturers, acording to the same specifications, and installed in the same manner. It therefore clearly appears that there was no negligence in adopting this type of equipment. See *Southern Railway Co.* v. *Chadwick,* 144 Va. 443, 132 S. E. 191.

From 1924 to 1928, all freight cars owned by defendant were equipped with this type of safety-bar. Cars put into service after 1928 seem to have been equipped with a different device, but the type in question was continued in use on cars built prior to 1928. There is an organization known as the American Railway Association, generally referred to as the A. R. A., to which all trunk-line railways in this country belong. It is stated that the major purpose of the organization is to design railroad equipment and prescribe standards for the interchange of cars of one railroad over the lines of other railroads. This organization, at the time of the accident, had adopted no standard brake-beam support. In 1932, after two years of investigation, it prescribed a standard support, to become effective January, 1935. On and after that date cars to be interchanged from one road to another will have to be equipped with appliances conforming to the adopted standard. The bar here involved complies with the requirement of the A. R. A. Under this state of facts, the defendant was not guilty of a breach of any duty it owed decedent in continuing to use this type of safety-bar. See *Southern Railway Co.* v. *Lewis,* 113 Va. 117, 73 S. E. 469; *Rupert* v. *Chicago, etc., Railway Co.,* 202 Wis. 563, 232 N. W. 550.

The third charge, upon which plaintiff relies to hold

defendant liable for decedent's death, is that it failed to make proper inspection and repair of the equipment after the safety-bars were installed. It was established that Butler and his men going from work late in the afternoon before the accident passed the same point, and at that time there was no obstruction in the tracks. It was agreed by counsel for the parties, that, if the safety-bar did in fact fall from one of defendant's trains, it fell from one going east. The proof showed that all cars on east-bound trains, passing over this section of track within a period of twelve hours prior to the derailment, were inspected in the usual way at Gladstone, about thirty-five miles west of the scene of the accident, and that this inspection disclosed no defect in any safety-bar on the cars. This work was done by regular inspectors each of whom had had from ten to thirty years experience. No evidence was adduced to show that the manner of inspection was different from that in use by other lines, or that the method was inadequate or improper, at least in so far as decedent was concerned.

Plaintiff insists that each of the three charges of negligence is supported by the following evidence: Two or three years before the accident the track supervisor, acting on his own initiative, for a period of sixty days, kept an accurate count of the number of brake-beam safety-bars found on each six mile section of the main line, and found that on each such section the average was six for the sixty days.

The probative value of this fact becomes insignificant when the testimony of the same witnesses is closely scrutinized. The men who actually made the count testified that they kept no record of the type of safety-bars picked up by them; that there were two or three other types then in use, and that in their opinion they found more of the other types than the one here involved. In other words, the proof relied upon fails to reveal how many bars of this particular type were picked up and salvaged during the period. Finally the evidence fails to disclose any breach of duty defendant owed decedent; and that decedent's contract of

employment imposed upon him the duty of ascertaining and removing all obstructions in the track where the safety-bar was found.

In 39 C. J. 712, this is said: "Where, by the terms of the contract of hiring, it is the duty of the servant to make an inspection for and to discover defects in the place of work, or in the tools, appliances, or instrumentalities for doing the work, or to remedy the same, or to do both, the risks assumed by him are materially different from those assumed by a servant working in or about such place or with such tools, * * * and he assumes the risks arising out of these defects, although * * * the very nature of the work enlarges or multiplies the risks. These risks are classified as risks ordinarily incident to the employment. This is an exception to the general rule that the master is bound to furnish the servant with a reasonably safe place to work and with reasonably safe tools * * * for doing the work, and also to the well settled general rule that the servant is ordinarily not charged with the duty of inspection for the purpose of discovering latent defects or dangers."

For the reasons stated, the judgment of the trial court is reversed, the verdict is set aside, and judgment here entered for plaintiff in error.

*Reversed.*